## DURKIN *vs.* THE CITY OF TROY.

61   437
79h 559
61b 437
42ap477

Where the foundation for an action against a city corporation to recover damages for a personal injury sustained by the plaintiff was, that a piece of ice upon which he slipped and fell was a dangerous obstruction to those using the sidewalk for passing along the street, which the city was bound to remove, and the danger consisted in the liability of those who stepped upon it, to slip and fall; *Held* that the obstruction was one to be avoided by those using the sidewalk, and seeing, or being able to see, the ice; and that if it could readily be avoided, the failure to avoid it, by one using the sidewalk and plainly seeing the obstruction, must be accounted negligence.

*Held, also*, that if there was danger in walking over the piece of ice, and the plaintiff voluntarily and unnecessarily undertook to walk over it, when he could plainly see it, and easily avoid it, and fell and broke a limb, he could not meet the allegation that his own negligence contributed to the result; or avoid the conclusion that he must therefore fail to recover damages of the city. *Volenti non fit injuria.*

And it being proved that the plaintiff not only did see the ice, but was warned of it, at the time; *Held* that he was not in a situation to charge his injury to the default of the city—if the city was in default—and should therefore have been nonsuited.

In such a case it is erroneous for the judge to refuse to charge the jury that "if, immediately previous to the accident, the plaintiff knew, or had noticed, that there was ice there, and then took the risk of passing over the place safely, he could not recover."

The duty of the passenger, in cases of that kind, is, to *avoid·* the obstruction, and not to encounter its dangers.

APPEAL by the defendant from an order denying a new trial, and also from a judgment entered upon the verdict of a jury, in favor of the plaintiff, for $1593.21 damages and costs.

The action was brought to recover damages for personal injuries received by the plaintiff on the 8th day of February, 1870, between the hours of 12 and 1 o'clock A. M. of that day. The plaintiff with his wife and little daughter, were returning home from a masquerade ball, and while walking on the north sidewalk of Congress street, in the city of Troy, he fell down and broke his leg. The plaintiff left the ball a few minutes after midnight, proceeded down Third street to Congress street, and then up Con-

Durkin *v.* City of Troy.

gress on the north sidewalk; when about half way over the tunnel in Sixth street, he attempted to cross over Congress street, and in the act of turning for that purpose, his right foot slipped and the fall broke his right leg. Both the plaintiff and his wife were familiar with the locality, and at that time were in the habit of passing Congress street, over the tunnel, several times a day; and on the day before the injury, the plaintiff passed over the spot three times, once in the morning and twice in the afternoon. It was a pleasant starlight night, and any object or obstacle on the sidewalk was easily seen. Where the plaintiff attempted to cross the street there was no cross-walk, and his wife testified that he had got within two feet of the gutter when he fell. The sidewalk on Congress street, over the tunnel, was of brick, properly constructed and in good ordinary condition and repair. There was here and there a small spot of surface ice, but no more than could have been found on other sidewalks at that season of the year; and it appeared that the city authorities had never heard any complaint in reference to the condition of this sidewalk. The fact was proved, and not disputed, that whatever patches of ice may have been on the sidewalk at the time of the accident, the same could have been easily seen, and were, in fact, so observed by the plaintiff and his wife; the latter, who was two paces ahead, cautioned her husband, just before the accident. Indeed the plaintiff testified that he knew of the existence of ice on this sidewalk on the tunnel, and had observed it twice only a few hours previous to the accident. The judge charged the jury that, by the uncontradicted evidence, the plaintiff saw the ice immediately previous to the accident. The plaintiff would not testify positively that he was stepping carefully at the time of the accident. This sidewalk was not only in good repair at the time of the accident, but it so continued down to the trial of this action in June 1871. The plaintiff was not compelled to go home by the way

of Congress street; he could have gone by another way, and so have avoided the ice at the spot where he slipped, without any increase of the distance.

*R. A. Parmenter*, for the appellant.

I. Upon the evidence, the complaint should have been dismissed, and the court committed an error in denying the motion for a nonsuit. That motion having been made in the first instance when the plaintiff rested, was renewed at the close of the testimony. 1. The defendants' liability for the injury sustained by the plaintiff is predicated on the fact that by the city charter, the common council of the city of Troy are constituted and declared commissioners of highways in and for the city, and on the assumption that through their negligence or omission of duty in respect to one of the streets of said city, this accident happened. The duties of commissioners of highways are prescribed by the Revised Statutes. The statute declares that the commissioners of highways in the several towns in this State shall have the care and superintendence of the highways and bridges therein, and that it shall be their duty (among other things not material here) to cause the highways and bridges which are or may be erected over streams intersecting highways, to be kept in repair. (2 *R. S.* 381, § 1, *5th ed.*) And by the charter of the city of Troy, its common council are constituted and declared commissioners of highways in and for the city, with power from time to time to pass such ordinances as they shall deem proper, to regulate, keep in repair, clean and alter the streets, highways, bridges, wharves, docks and slips in said city. (*Charter of* 1861, § 15.) The duty and liability for its neglect are creatures of the statute, and do not grow out of the common law. In Massachusetts, by its statute, that duty devolves on the towns, and they are required to keep the highways " safe and convenient for travelers." (*Stanton* v. *Springfield*, 12 *Allen*, 568.) It will not be de-

nied that if a municipal corporation organized under a charter similar to that of the city of Troy, shall negligently suffer a street to get out of repair, or allow an obstruction, created by any of its citizens, to remain after knowledge or notice of the same, it will be liable for any injury that may happen to any person, through such negligence; provided, however, the person so injured be not himself chargeable with contributing negligence. (*Wallace* v. *The Mayor &c. of New York,* 18 *How.* 169. *Clark* v. *The City of Lockport,* 49 *Barb.* 580. *Davenport* v. *Ruckman,* 37 *N. Y.* 568. *Conrad* v. *The Trustees &c. of Ithaca,* 16 *id.* 158.) The opinion of Selden, J., adopted by the Court of Appeals, in deciding the case of *Hickok* v. *The Trustees of the Village of Plattsburgh,* lays down the principle on which this liability rests, in these words: " That whenever an individual or a corporation, for a consideration received from the sovereign power, has become bound by covenant or agreement either express or implied, to do certain things, such individual or corporation is liable, in case of neglect to perform such covenant, not only to a public prosecution by indictment, but to a private action at the suit of any person injured by such neglect. In all such cases, the contract made with the sovereign power is deemed to enure to the benefit of every individual interested in its performance." (16 *N. Y.* 163.) The cases in which this responsibility has been asserted vary, widely. Where the corporation builds a sewer, or directs some other similar improvement to be made, and the same gets out of repair, notice of its defective condition may not be a condition precedent to the liability of the corporation. That was held in *Barton* v. *The City of Syracuse,* (37 *Barb.* 292.) Where, however, an obstruction to a street is made by the act of a citizen, without authority, the corporation will not be liable when notice is not shown to have been received by its officers. This was held in *Griffin* v. *The Mayor &c. of New York,* (5 *Seld.* 456.) In an-

other class of cases, where the obstruction which produced the injury is occasioned by the elements, liability will not attach to the corporation unless some neglect on the part of the municipal authorities be shown after knowledge or notice of the obstruction has been brought home to the corporation, and a reasonable time for its removal given. (*Nason* v. *City of Boston*, 14 *Allen*, 508. ' *Donaldson* v. *Same*, 16 *Gray*, 511. *Shepherd* v. *Inhabitants of Chelsea*, 4 *Allen*, 113. *Stanton* v. *City of Springfield*, 12 *id.* 566. *Rowell* v. *City of Lowell*, 7 *Gray*, 100. *Kidder* v. *Inhabitants of Dunstable*, *Id.* 104. *Smith* v. *City of Lowell*, 6 *Allen*, 39. 97 *Mass.* 268. 102 *id.* 511.) And it will be seen that the duty imposed by the Massachusetts statute to regulate and keep in repair the streets and highways is quite as stringent as that imposed by our Revised Statutes. 2. It is submitted that in the light of the authorities above cited, and of the evidence construed most favorably for the plaintiff, negligence on the part of the municipal authorities of the city of Troy, was not established at the trial of this action. It was proved, and not disputed, that the place where the plaintiff fell was a brick sidewalk properly constructed and in good repair. 3. Nor was sufficient proof given of any omission of duty on the part of the city government, in the management of the street on which the accident occurred. In truth, no defect in, or obstruction to, the sidewalk in question was shown. And, moreover, according to the undisputed testimony, the municipal officers having charge of the street department had no knowledge or notice of the pretended obstruction. An injury to a traveler occasioned in this wise is *damnum absque injuria.* 4. In the case at bar the specific obstruction complained of was caused, not by an act done or directed to be done by the defendant or any of its officers, but solely by the elements, over which the corporation had no control. Look at the undisputed facts. The accident happened shortly after midnight. The small spot of ice

on which the plaintiff fell had formed in the earlier part of the same night and only a few hours previous to the injury. At 2 o'clock P. M. the thermometer indicated two degrees above the freezing point, and at 9 o'clock P. M. the mercury had fallen six degrees. These facts appear from the record· of the meteorologist, and are reliable. There was no ice on the sidewalk at 2 P. M., for the sun shone and it was thawing. Later in the evening, as the cold increased, the spot of ice was formed. Human agency had nothing to do with the creation of the obstacle, and intermediate the formation of the ice and the breaking of the limb, no·opportunity was afforded for the removal of the obstruction. 5. A municipal government is not an insurer of the life or limbs of persons while traveling the sidewalks within the territorial limits of the municipality. On that subject an eminent judge remarked: "But injuries to both person and property will occur, which no legislation can prevent, and which no system of laws can adequately redress. The government does not guarantee its citizens against all the casualties incident to humanity and to civil society; and we believe it has never been called upon to make good, by way of damages, its inability to protect against such misfortunes." (5 *Seld.* 460.) The circuit judge charged that the city was not liable as an insurer, but at the same time he sanctioned a verdict which established a measure of responsibility scarcely less than that of an insurer. 6. In a climate like our own, the temperature is subject to sudden changes. The court charged the jury that the corporation was bound to take cognizance of that climatic fact. The climate of New England is quite as changeable as that of New York, and yet the courts of Massachusetts hold that the traveler must take cognizance of the climatical changes. The court, in *Stanton* v. *City of Springfield*, (12 *Gray*, 570,) said: "But roads will be damp after rain, and dusty in times of drought. So they will be slippery in seasons of

Durkin *v.* City of Troy.

frost, and when the pavements are wet. These are states of the road produced by natural causes, not depending upon the care or skill with which they have been constructed, and the remedy for the inconvenience is to have the shoes of animals sharpened, and for travelers on foot to take corresponding precautions, so as to avoid slipping."

The good sense of the foregoing remarks is obvious. But if the corporation, as well as the citizen, is bound to know that in winter season it may rain or snow, thaw or freeze, during the night time, and that such action of the elements may temporarily create partial obstructions to streets and sidewalks, certainly that knowledge does not impose upon the municipal authorities the extraordinary duty of guarding the streets incessantly. That would be utterly impracticable; and the law does not impose on a municipal corporation any such duty. 7. Nor is a municipal corporation under any legal obligation to remove, or cause to be removed, from its streets and sidewalks small spots of ice formed by the action of the elements, and which do not, in the proper acceptation of the term, constitute an obstruction to the ordinary use of the street or walk. In this case there is no pretense that the whole sidewalk, or any considerable portion of it, was obstructed by the ice. Indeed the evidence shows that the ice complained of extended only a few inches either way, and its location was very near the curbstone. Rivers, the night patrolman, called by the plaintiff, testifies, " It was considerably icy for a number of inches, in some places." This witness was speaking of the condition of the sidewalk during the night, for he had no knowledge as to its condition in the day time. He patroled the street only in the night time. But the defendant would not be liable for an injury occasioned solely by the slipperiness of ice on a public street. Hoar, J., in the Springfield case above cited, said: "No reported case is found in which it has been decided that a way is defective, merely because it is

slippery, if, in all other respects, in good order and properly constructed, and the ice constituting no obstruction except by its smoothness." And in a similar case reported in the same volume, at page 572, the court said: "But in the instructions given, we understand the court to have in substance ruled, that the mere fact that the sidewalk was slippery with ice, if, in the opinion of the jury, it was thereby rendered unsafe or inconvenient for travelers, and if the ice had existed for twenty-four hours, would establish the existence of a defect in the way for which the city was responsible. This ruling, for reasons fully stated in the recent case of *Stanton* v. *Springfield*, we think, cannot be supported." 8. The fact that under the charter the common council of the city of Troy may pass, or has passed, an ordinance requiring all snow or ice to be removed from the sidewalks by the owners of property adjacent thereto, does not increase the general obligation of the city to keep its streets in proper condition. In the case of *Stanton* v. *City of Springfield*, (12 *Gray*, 571,) the court said: "But as has already been observed, this obligation is not increased or qualified in any degree, and remains the same as it was before such by-laws as these were authorized or enacted." The case at bar discloses no act on the part of the corporation, either of commission or of omission, which tends to establish negligence. 9. So, too, on the other branch of the issue, the action cannot be maintained. The plaintiff's own negligence or want of care produced, or at least contributed to produce, the injury. It was incumbent on the plaintiff to prove himself free from fault, however negligent the defendant may have been. As to this proposition there is no conflict of authority. Now, all the evidence tends to show that on the occasion of the accident the plaintiff was heedless and careless. He did not take the least precaution for his own safety. The sidewalk was twelve feet in width, which afforded abundant space for the plaintiff to pass over with-

Durkin v. City of Troy.

out encountering the ice on which he fell. At that late hour, of a cold winter night, when the water which appeared on the sidewalk in mid-day, had congealed into ice, it was his duty to walk with appropriate care and circumspection. The smallest degree of attention on his part would have prevented the disaster. Although warned by his wife, of the danger, the plaintiff confesses, in his testimony, that he was not particularly careful. If the law exacts any degree of care on the part of travelers on foot, it is not perceived how this action can be maintained. (a.) The night was clear, and all things on the sidewalk were plainly visible. The stars were shining, and the gas lamp near by was burning. There was nothing to distract or divert the attention of the plaintiff, and nothing intervened to obstruct his vision. Heedlessness, under such circumstances, is inexcusable. (b.) The plaintiff was familiar with the locality. He lived near by, and for weeks he had passed daily over this tunnel on this sidewalk. He so passed at least three times during the day previous to the accident. (c.) He knew the form, the grade and the condition of the sidewalk. He testified that he had known the place to be slippery for a considerable time previous to the accident. The ice was observed by him on the same day of the injury. Therefore, with full knowledge of the exact state of things on the spot where the accident occurred, he took the risk, and the law affords no redress for the serious injury which followed. (*Butterfield* v. *Forrester*, 11 *East*, 60.) (d.) Moreover, it was proved and not disputed, that just before the accident the plaintiff was cautioned by his wife to avoid the ice. His attention was directed to the identical spot of ice, in time to have avoided it. Mrs. Durkin was six feet ahead of her husband when she gave him the warning, and he testified that he heard what she said to him. (e.) Whatever ice, whether much or little, there was at that hour of the night on this sidewalk, could have been observed by the plaintiff by the ordinary use of

his senses. Indeed he could have failed to see it only by closing his eyes or looking in another direction. But argument is unnecessary on this proposition, for the proof is direct and conclusive, that the ·plaintiff did see the icy spot in time to have avoided it, had he chosen to do so. He, however, voluntarily assumed the hazard of walking over it, rather than around it, and, in law, he alone is answerable for the consequences. The authorities are clear and decisive on this point. The same rule has been applied where the injured person had carelessly walked into a pit-hole which had been wrongfully dug and negligently exposed by the defendant. (*f.*) It also appears in the evidence that at the time of the accident the plaintiff was not on that portion of the sidewalk ordinarily used by travelers. He was very near the gutter, and just in the act of crossing Congress street diagonally. The width of the sidewalk was twelve feet, and the plaintiff testified that he was nearer the curbstone than to the center of the sidewalk. According to the recollection of his wife, he was still nearer to the curbstone. Thus it appears that the spot of ice which occasioned the fall, was only two or three feet from the curbstone. There remained nine feet in width of the sidewalk, over which the plaintiff might have passed safely. It is pretty clear that this accident would not have happened, had the plaintiff not undertaken to cross Congress street diagonally, at a point where there was no crosswalk. And it is submitted that this action cannot be maintained upon any proper or reasonable aspect of the case, as presented by the evidence. The law and the facts are with the defendant upon both branches of the motion for a nonsuit. Nor was the testimony so conflicting as to make it necessary or proper to take the opinion of the jury on any material question of fact.

II. The verdict is manifestly against the evidence, and the court erred in refusing a new trial.

III. In submitting the case to the jury some errors were

committed by the court, which might have influenced, and probably did influence, the verdict. 1. The refusal to charge the jury that the defendant was not liable for an injury occasioned by an obstacle on the sidewalk, unless it appeared, from the evidence, that the municipal authorities had neglected to remove such obstacle, within a reasonable time after knowledge or notice of its existence, was error. In two different forms this proposition was presented to, and repudiated by, the court. 2. The court also erred in refusing to charge that if the ice on which the plaintiff fell had formed after the close of the usual working hours of February 7th, 1870, the defendant was not in law responsible for the injury. By that refusal the court substantially held, and instructed the jury, that in order to escape liability for accidents of this description, a municipal corporation must cause the streets to be patrolled at all hours of the day, and in that or some other similar way guard against the changes incident to our climate. The jury had the right to understand from this refusal that the defendant could be relieved from responsibility for the injury complained of, only by incessantly watching for and immediately removing any ice which should, from natural causes form on the sidewalk. 3. The court instructed the jury that there was indisputable evidence of the fact that the plaintiff saw the obstruction previous to the injury, and still refused to charge that if such obstacle was plainly visible to the plaintiff, so that he could have seen and avoided it by the ordinary use of his senses, he was not entitled to recover damages for the injury. The court, however, did, in that connection, charge that, under such circumstances, the plaintiff was bound to exercise increased care in encountering it. By this the jury were told that, although the ice was seen by the plaintiff, and he might have avoided it, yet, if he deliberately entered upon it, using increased care in doing so, he was entitled to a verdict. There was error in the refusal, and in the qualifica-

tion also, and the exception was well taken. 4. The judge then advanced another step in the wrong direction. For, without qualification or condition, he refused to charge the jury that if the plaintiff did see the ice before the accident, the city was not legally responsible for the injury. That was clearly erroneous. Under such charge there could be no such thing as contributing negligence imputable to the plaintiff. 5. The learned judge then made a suggestion which might, perhaps, be construed as a modification of his previous charge. For the purpose of ascertaining more definitely what the court did intend to charge the jury on this branch of the case, the counsel for the defendant requested the court to charge that, if immediately previous to the accident the plaintiff knew or had notice of the existence of this ice, and he took the risk of passing over it safely, he could not recover for the injury. The court refused so to charge, and an exception was taken. The rule of law promulgated by this refusal, is in conflict with an unbroken current of judicial authority. It has been held, time and again, in this class of actions, that where the defendant was confessedly in the wrong, still the action could not be maintained if the party injured saw the danger and neglected to heed it. And this court recently granted a new trial in the case of *Draffin* v. *The Village of Lansingburgh*, and set aside a judgment recovered by the plaintiff therein, because the plaintiff saw the obstacle which produced the injury in time to have avoided it. And on the retrial of that case at the Rensselaer circuit, the plaintiff was nonsuited. The judgment should be· reversed, and a new trial granted, with costs to abide the event.

*M. I. Townsend,* for the respondent.

I. Municipalities, having the powers ·and duties of commissioners ·of highways, in the State of New York, are bound to keep the streets, at all times, in such a condition

as to furnish " a reasonable assurance of safety " to the person passing through the streets. (*Davenport* v. *Ruckman and the Mayor &c. of New York,* 37 *N. Y.* 568, 573, 574.) The city of Troy is one of the municipalities to which this rule applies. In *Wendell* v. *City of Troy,* (39 *Barb.* 329, *affirmed in the Court of Appeals,* 4 *Keyes,* 266,) Judge Hogeboom says, on page 335; " they are bound to keep the streets and highways in a proper state of repair, and free from all obstructions and defects in the road-bed, which vigilance can detect, or remove." The reasonableness of this rule, as applied to the defendant, is vindicated by reference to the 15th section of the defendant's charter, passed April 12th, 1816. It is in the words following: " Section 15. And be it further enacted, that the said common council be and they are hereby constituted and declared commissioners of highways in and for the said city, and shall and may, from time to time, pass such ordinances as they shall deem proper to regulate, keep in repair, clean and alter the streets," &c. Indeed, the doctrine above cited is so clearly established in this State as not to admit of argument. The doctrine is universal, and subject to but a single exception, to wit, in cases where defects in the street are not caused by the city authorities. Before the municipality can be made liable, the defects must have been brought to the knowledge of the city authorities long enough to have enabled the city officers to have remedied the defect, or the defect must have existed so long that the authorities were bound to have discovered and remedied it. With these exceptions, the liability for injuries caused by defects in highways is absolute and universal, whether the defects were caused by the elements, or by the act of man.

II. The counsel for the defendant, at the circuit, claimed that the law, as above laid down, was subject to a still further exception: That if the condition of the street becomes unsafe from ice—unsafe from being slippery—the

municipal body are not liable for a failure to take any steps to restore the condition of the streets to one of safety. No hint in the adjudications of our State gives any countenance to this view. So far as the adjudications of our State are concerned, the municipality are bound to restore the streets to a condition of safety within a reasonable time, whether rendered unsafe by the act of man, or by what may be called the action of elements, or the forces of nature. The counsel cited, in support of his position, *Stanton* v. *Springfield,* (12 *Allen,* 566.) In this case Judge Hoar, without statute authority, and without precedent, declares and adjudges that the duty of keeping the streets in such a condition as to be " safe and convenient," must be so construed as to except the case of the streets being unsafe from being slippery from ice. In illustrating, on page 570, the learned judge compares a slippery street with a muddy, or dusty street, which has become so from natural causes. But would the learned judge contend—will the opposing counsel contend—that if a street becomes muddy from the rains of heaven, and the municipal authority negligently suffers the road to remain out of repair from that cause, until teams are stalled and property destroyed by it, the municipality would not be liable for the damage done? The judge seems to think the rule requiring slippery ice to be removed, or rendered passable, within a reasonable time, would operate hard upon country towns. But the judge seems to have forgotten that these incorporated cities and municipalities are, by their charters, invested with powers utterly unknown to country towns. At least this court knows that such is the difference in the laws as applied to the two different jurisdictions in this State, for providing for the safety of persons traveling through the streets. In our New York cities and villages, the local authorities are invested with the power of taxing all the property of each municipality, to whatever extent it may be necessary to

do, in order to raise the means to make the streets safe, while in country towns the power of taxation is limited; and in order to make the towns liable, it is often necessary to show that money has been raised, and is on hand, with which the repairs which are necessary, may be made.. We say, with confidence, that the opinion of the learned judge was not well considered, and if correct, as applied to the large towns of Massachusetts, is entirely incorrect as applied to the defendants, or to any of the large towns of this State. In our State the increased powers of large towns and cities, and the increased necessities created by the necessary modes of life, impose additional duties upon the guardians of the streets, over those resting upon overseers of highways in the country towns.

But the learned judge has strangely jumbled together the duties of court and jury—has mixed up questions of law with questions of fact. The court should lay down the legal principles, and the jury should find the facts in each particular case, and apply the law, as laid down by the court, to the facts found. The judge lays it down, as a legal proposition, that if the street be made substantially level, and the grade be made convenient, it cannot be negligence, in any case, to leave the ice in a slippery condition for any length of time, if that ice be spread evenly over the ground ! What statute has established that principle of law? What previous adjudication had announced that legal position ? Certainly the learned judge simply left the bench and entered the jury box, and, without statute or adjudication to guide him, defined what would not be negligence. Certainly there is nothing in the constitution or laws of Massachusetts, or of New York, to justify a court in so invading the jury box, and wresting from the jury their unquestioned prerogatives. But the position assumed by the learned judge rests on no principle. Is his doctrine true

because slippery streets come from the act of God? If an unwonted rain washes away part of the street, must not the street be restored? If the lightning strikes down a huge tree, or hurls an overhanging rock into the highway, must not the obstruction be removed? Is it because it is impossible to improve slippery ice? The axe and the pick certainly can remedy the evil; certainly "salt has not lost its savor." Judge Hoar has certainly not a foot to stand upon. Let us bring the principle home. Suppose a drizzling rain, when the temperature was low, should cover State street, in Albany, with glare ice, spread evenly over the surface of the street, and the city authorities should suffer the whole street to remain in that condition seven days; suppose the water, which had covered the State street hill with ice, should gather where the street narrows below Broadway, into the gutter, and then attain a force sufficient to displace a curbstone, and the authorities should suffer the curbstone to be displaced for the same seven days; two men start from the top of State street hill to walk to the quay, on the evening of the seventh day, one falls on the ice and breaks his leg; the other continues his walk, and accidentally steps into the hole caused by the displacement of the curbstone, and breaks his leg, could the court say, as a question of law, that the one might recover against the city authorities for negligence, and the other could not? It would be the province of the jury to say in each case, whether there had been negligence or not.

In the case of *The City of Providence* v. *Clapp*, (17 *How. U. S.* 161,) it was held, that if the city did not so remove the ice and snow from the streets, so as to render the streets, in the opinion of the jury, safe, it was negligence. This was so held in *Payne* v. *Lowell*, (10 *Allen*, 147 ; *Wall* v. *Lowell*, (10 *Cush.* 260;) *Shea* v. *Lowell*, (8 *Allen*, 136.) And it was not until the case in 12 *Allen*, that even the Massachusetts courts discovered that if the streets were

kept 'with a surface even on the established grade, no responsibility could attach to a town, or city, if the necks and limbs of the citizens were endangered by ice for months. The intolerable character of the rule laid down by Judge Hoar in 12 *Allen,* is finely illustrated, by the cases of *Luther* v. *City of Worcester,* and *Hutchings* v. *City of Boston,* (97 *Mass.* 268 *and* 272,) where the court allowed parties to recover for damages sustained on a slippery street, where there was the slightest possible variation from absolute evenness; in the latter case, the ice on the sidewalk was shown to be one and a half inches higher in the center of a sidewalk of four feet width, than it was on the side! If this be not an absolute abandonment of Judge Hoar's doctrine, it is within an inch and a half of it. We do not contend that leaving the sidewalk slippery from glare ice can be pronounced negligence, as a question of law. We simply contend that it may, in certain circumstances, justify a jury in finding that the authorities were guilty of negligence. Such was the charge of Judge Ingalls, and he committed no error in so charging the jury.

III. The general charge of the judge was correct, and no error was committed by him in his rulings upon the specific questions presented.

*By the Court,* PARKER, J. The plaintiff, on the night of the 7th of February, 1870, in walking up Congress street, on the north sidewalk thereof, in the city of Troy, slipped upon a patch of ice, fell and broke his leg. For this injury he brought this action against the city, and obtained a verdict for $1375. A motion was made, upon the minutes of the judge, for a new trial, which was denied. Judgment was perfected upon the verdict, and the defendant appeals from the order denying a new trial, and from the judgment.

When the plaintiff rested, the defendant's counsel

moved for a nonsuit, on the ground that no negligence on the part of the defendant had been shown. Also, that the plaintiff was guilty of contributory negligence. The motion was denied, and the defendant excepted. The motion was renewed, at the close of the evidence, on the same grounds. And also on the ground that, if any obstruction upon the sidewalk existed, it was shown to have been produced by the freezing of water on the night of the injury, of which the defendant had no notice before the occurrence of the injury. This motion was also denied, and the defendant excepted.

The most that can be claimed by the plaintiff in regard to the accumulation of ice upon the sidewalk is, that there was, at the place where he fell, a patch of glare ice, not extending across the walk, but, so far as there is any evidence of its dimensions, of inconsiderable extent. The plaintiff testified, "it was a slippery sidewalk, *at that point*, where I fell," which was between the center of the sidewalk and the curbstone. All the description his wife gave of it was, that the cause of his fall was the "icy sidewalk." Rivers, the policeman, called by the plaintiff, testified that the sidewalk "was considerably icy, for a *number of inches*, in some places;" that where the plaintiff slipped was near the center of the walk, and "there is where the ice was." Hinsdale, the city commissioner, who was actively engaged in inspecting the streets, said he saw no accumulation of ice on the sidewalk, *only in spots*, where the bricks were worn, the water would settle and freeze. And Barron, the street inspector, testified that he was over this sidewalk three or four times a day, and found nothing *but a little bit of ice on it, once in a while.* There is no other evidence in the case, indicating its extent; and it stands uncontradicted that the ice upon which the plaintiff stepped and fell, was a distinct patch of ice, of an extent to be measured by inches, rather than feet, and there is no proof that it extended across the sidewalk.

Durkin *v.* City of Troy.

Now, the foundation of the plaintiff's cause of action, if he has one, is, that this piece of ice was a dangerous obstruction to the passage of those using the sidewalk for that purpose, which the city was bound to remove; and the danger consisted in the liability of those who stepped upon it, to slip and fall.

The obstruction was, therefore, one to be avoided by those using the sidewalk, and seeing, or being able to see, the ice; and if it could readily be avoided, the failure to avoid it, by one using the sidewalk, and plainly seeing the obstruction, must be accounted negligence. If there was danger in walking over this piece of ice, and the plaintiff voluntarily, and unnecessarily, undertook to walk over it, when he could plainly see it, and easily avoid it, and fell and broke his leg, I do not see how he can meet the allegation that his own negligence contributed to the result, or avoid the conclusion that he must therefore fail to recover damages of the city. *Volenti non fit injuria.*

That he did see it, and not only so, but was warned of it by his wife, who was ahead of him, is undeniable. · He was not, therefore, in a situation to charge his injury to the default of the defendant, if the defendant was in default, and should have been nonsuited.

But, again, the defendant's counsel requested the judge to charge the jury that "if, immediately previous to the accident, the plaintiff knew, or had noticed, that there was ice there, and then took the risk of passing over there safely, he cannot recover." This was refused, and the defendant excepted.

This, I think, was clearly wrong. The refusal must have gone upon the ground, that the only obligation resting upon the plaintiff was, not to avoid the danger by passing by the ice, without stepping upon it, but to use caution while walking over it. This, I think, is incorrect. If the ice presented a dangerous obstruction which the defendant was bound to do away, by removal

or some other means, so that it was negligence on its part to leave it on the sidewalk, it must follow that it was negligence on the part of the plaintiff, voluntarily and unnecessarily to venture upon this dangerous obstruction, however carefully he might attempt to carry himself upon it. The duty of the passenger, in such cases, is, to *avoid* the obstruction, and not to encounter its dangers. This we held in *Draffin* v. *The Village of Lansingburgh*, recently decided by this general term. See also *Butterfield* v. *Forrester*, (11 *East*, 60,) cited in the above case.

The judgment and order appealed from must be reversed, and a new trial granted, with costs to abide the event.

[THIRD DEPARTMENT, GENERAL TERM, at Albany, January 2, 1872. *Miller*, P. J., and *Potter* and *Parker*, Justices.