## ELLEN POMFREY, RESPONDENT, v. THE VILLAGE OF SARATOGA SPRINGS, APPELLANT.

*Negligence — duty of a traveler to avoid a dangerous obstruction upon the sidewalk — what evidence establishes a dedication of land for a street and an acceptance thereof — 1866, chap. 220 — construction thereof.*

The plaintiff, while passing along a sidewalk in one of the streets in the defendant's village, stepped upon a mass of snow and fell thereby sustaining injuries, to recover damages for which this action was brought. The snow slid upon the sidewalk from the roof of a barn standing on the adjoining lot and formed a bank of about three feet in depth and forty feet in length, breaking off sharply at the end. The bank had remained on the sidewalk some two weeks before the accident. Upon the trial the court refused to instruct the jury "that if the obstruction was visible and apparent to any passer-by the plaintiff was guilty of negligence in attempting to cross it," and that "if the defect complained of was such as would be seen by any ordinary person passing along the street it was negligence for the plaintiff to attempt to pass over the defect, but she should have gone around the same."

*Held,* that the court properly refused so to charge; that the question as to whether, under all the circumstances of this case, the plaintiff was guilty of negligence in attempting to pass over the bank was properly left to the jury for its decision (FISH, J., dissenting.)

The defendant denied that the place where the accident occurred was a part of a public street. The evidence showed that it was used as a part of a continuous street, and had been so used for many years, and that the defendant had constructed a sidewalk upon a portion of the street. The owner of a barn on a lot adjoining the place of the accident used the sidewalk in crossing to and from his barn to the street, and occasionally left carriages standing thereon. No formal acceptance of the land by the defendant was shown.

*Held,* that the evidence justified the jury in finding a dedication and acceptance of the land. (FISH, J., dissenting.)

By section 38 of the defendant's charter (chap. 220 of 1866) the village superintendent is to have the care and supervision of all the streets, sidewalks, etc., and is to make a report to the trustees in each year as to their general condition, "with estimates of the probable expense to put them in good repair;" he was also required to report "the probable amount necessary to keep them all in good order during the coming year," and by section 54 the board of trustees were authorized to raise by tax not exceeding $5,000 "for the support of roads, bridges, culverts, streets, lanes and alleys within the village."

*Held,* that the board of trustees had power to raise money to remove dangerous obstacles from the sidewalks in the village.

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

This action is brought and the recovery at circuit was for damages sustained by the plaintiff by reason of injury resulting from a fall upon the sidewalk on the south side of Lake avenue, Saratoga Springs. The complaint charges that her injury is due to the negligence of defendant as a municipal corporation, in permitting a dangerous bank of snow and ice to accumulate and remain on the sidewalk. There is no dispute but that Lake avenue is one of the streets of the village, under the charge, and under the jurisdiction of the village authorities, but it is denied that the particular place where plaintiff fell and received her injuries was so far a part of said highway as to be under village control. Evidence was given tending to show that about forty years ago, a part of what is now Lake avenue was a common farm road leading from the village. At that time, James M. Andrews became and was the owner of the land on the south side of the road, including that upon which the plaintiff met her disaster. His barns then stood about thirty feet from the highway. It seems there was a fence along the highway some thirty feet north of his barns. About that time Andrews moved the fence in to nearly a line with the north side of his barns, so that the barns would make the boundary of the street for one hundred feet or more. There never was any official action on the part of the village authorities accepting the land so thrown open as a public street. It assumed the control of it, however, and built a sidewalk along the Andrews line, except in front of the barns. Andrews continued to use the ground in front of his barns to drive carriages from the street to it, and left and washed them there. The public used it as a walk in and along his whole property, and he continued to use it as stated. His barns had slate roofs. When the snow fell in much quantity it would slide from the roof to the sidewalk in front, and, on the 9th of January, 1883, had accumulated by that means, so that at the highest point it was about three feet deep, and had grown hard and icy, and at each end made an ascent to get upon it and an equal descent to step down. In going over this mound of snow and ice plaintiff fell and received the injury complained of.

*Charles S. Lester,* for the appellant.

*L. B. Pike,* for the respondent.

PECKHAM, J. :

I think this judgment should be affirmed.

*First.* The admission in evidence of the by-laws of the village seems to me to have been an immaterial matter. If they furnished no method of obtaining funds to keep the streets in order, but merely provided that the adjoining owners should do so, as a piece of evidence they had no effect at all. An exception to their admission would not raise the question of defendant's liability for a mere non-enforcement of its by-laws. This would have been raised by a request to charge that no such liability existed and an exception to a refusal so to charge.

*Second.* Under the circumstances in which the question to the witness Morris was put, I think no error occurred in permitting its answer. The witness was asked regarding the condition of the place on the ninth of January, when the accident occurred, and for two weeks prior thereto. The witness described it and then added : I speak from experience; I know that to be a fact. He meant that he knew the description he had just given of the condition of the street at this point was accurate, as he spoke from experience. The question was then put, "you fell there yourself?" and he said "I fell once." It is evident that he was stating the condition of the sidewalk on the ninth January, and for two weeks prior thereto and that his fall was during that time and that substantially there was during that time no change of condition.

*Third.* There was no error in refusing to instruct the jury "that if the obstruction was visible and apparent to any passer-by, the plaintiff was guilty of negligence in attempting to cross it." Nor was there any error in the refusal to charge that "if the defect complained of was such as would be seen by any ordinary person passing along the street, it was negligence for the plaintiff to attempt to pass over the defect, but she should have gone around the same."

Whether plaintiff was guilty of negligence in seeking to pass over the obstruction, even when she saw it, was a question of fact. A person who, in the lawful use of a highway, meets with an obstacle therein, may yet proceed, if it be consistent with reasonable care so to do, and generally this is a question of fact depending upon the nature of the obstruction and all the circumstances surrounding the party. I do not say there can be no case where the

danger in going forward would be so great and so perfectly apparent, that any one persisting with knowledge in doing so would, as matter of law, be guilty of negligence, but I think this is no such case.

The case of *Griffin* v. *The Mayor of New York* (9 N. Y., 456) is not in point. The obstacle was such in that case that no ordinarily prudent man would have made the attempt to drive over it, as the attempt was almost certain to result in an accident.

This case is much like that of *Dewire* v. *Bailey* (131 Mass., 169), and the remarks of the court therein I fully assent to. (See, too, *Weed* v. *Village of Ballston*, 76 N. Y., 329 ; *Minick* v. *City of Troy*, 83 id., 514, and also the cases cited by the court in 131 Mass., *supra.*)

The obstruction seems to have been an accumulation of snow and ice on the sidewalk, and going the whole way across, so that to entirely avoid it one would have to go out in the street as distinguished from the sidewalk. When such an obstruction is seen by the passer-by, although ·he may see that it is harder or more dangerous even to cross than a perfectly level and smooth walk, yet I cannot assent to the proposition that keeping on and making a careful and cautious effort to cross the obstruction is in all cases negligence as matter of law instead of being a simple question of fact. In *Durkin* v. *City of Troy* (61 Barb., 437, at page 454) the court describes the place where the accident happened, and it appeared that the plaintiff saw the obstruction or the icy place, and was warned of it at the time.

The requests of the defendant's counsel in this case took from the jury any question as to whether in fact the plaintiff did see the difficulty in the way, or that it was dangerous to pass over it, and if she did not see it or know that it was dangerous, whether she had any excuse for failing to see or to notice its dangerous qualities. Our courts have held that mere knowledge previously obtained of the existence of an obstruction or of a dangerous place in the street did not necessarily show that plaintiff noticed it at the time of the accident, and whether if the plaintiff did not notice the obstruction, she would then be guilty of negligence has been held to be a question of fact. (See *Driscoll* v. *The Mayor*, 11 Hun, 101 ; *Thomas* v. *The Mayor*, 28 Hun, 110 ; *Evans* v. *City of Utica*, 69 N. Y.,

166; *McRickard* v. *Flint,* in Ct. of App., reported 20 Weekly Dig., at p. 328,)

In 69 New York (*supra*) the Court of Appeals holds that mere knowledge of the existence of ice does not render the person negligent as matter of law in attempting to pass. In that case somewhat similar requests were made and refused. I think the right disposition was made of the requests by the modification of them by the judge. There was no error, therefore, in refusing the requests, for even if the obstructions were apparent, and such as an ordinary person might see, yet possibly the plaintiff in passing along, intent on her business and assuming the safety of the street, did not notice its dangerous condition, and if she did not, whether she was excused from such notice, was a question for the jury. In other words, taking the whole circumstances of the case into consideration, the question as to the negligence of the plaintiff was one for the jury and not for the court. The requests of the defendant's counsel were properly modified by the learned judge, and there was no error in his disposition of the whole question.

*Fourth.* To my mind it is plain that the evidence made a dedication and acceptance of the street and the *locus in quo.* Certainly the jury in coming to that conclusion, under the charge of the learned judge, agreed upon no verdict which was against the evidence. The fact plainly appears that the strip in question forms part of a continuous line of street which has been controlled by defendant for years. It is equally plain that the only user of the strip, by the original owner or his assigns, was to cross the sidewalk in obtaining access to his barn from the street, just the same thing that is done by every owner of property on a street, access to which by carriage is across the sidewalk. The evidence does not show that Mr. Andrews exercised control over this spot. It simply shows that he placed his wagons and sleighs on and at times somewhat obstructed the clear passage over the sidewalk, so that persons in passing along might occasionally have to go around this temporary obstruction. This is frequently done by persons who have made no claim to any right to the sidewalk, and is not necessarily any such control over the land as to take it out of the description of a village street. At most it is evidence bearing upon the question of dedication and acceptance, which question was sub-

mitted to the jury. As to the claim that a dedication must, under the evidence, have been made subject to the right to obstruct the street or sidewalk by snow which had fallen from the barn, I regard it as not well founded, certainly not so well founded from the evidence as to make it a matter of law that no legal and unconditional dedication and acceptance had been proved.

*Fifth.* The last proposition of the defendant, that there was no way of raising funds for the keeping of the streets free from a dangerous accumulation of snow and ice, I do not regard as well founded. By section 38 of the charter (chap. 220 of 1866) the village superintendent must within ten days prior to the annual village election report in writing to the trustees the condition of the * * * sidewalks * * * with the probable amount necessary to keep them all in good order during the coming year. It is not keeping them in good order to permit a dangerous accumulation of snow and ice in any of such streets. By section 54 the trustees are authorized, for the purpose of providing the means of sustaining the several departments and defraying the expenses of the corporation, to levy and collect an annual tax, not exceeding $5,000, for the support of roads, bridges, culverts, streets, lanes and alleys within the village. This language includes the sidewalks of streets, and the expression "for the support of streets," etc., when thus used, means keeping the whole street, including sidewalks in order, and keeping such places in order includes the removal of dangerous obstacles therefrom. There was no proof of a want of funds in this department, or for the purpose of the support of roads, streets, etc. A question was, indeed, put to the superintendent of the village whether he had at the time of the accident funds in his hands for the purpose of the cleaning of sidewalks, and he said he had not. The answer to this question was as the case shows, simply an opinion of the superintendent and not a mere statement of fact, and the superintendent, while having plenty of funds for the support of roads, streets, etc., may have supposed such funds not applicable to cleaning sidewalks. This is made entirely clear when in answer to the question : "You say you had no money in your hands for the purpose of keeping snow and ice off the street?" the witness said, "no, sir;" and to the additional question, "Did you ever have?" He said again, "No, sir." It is

plain the witness was of the opinion that money raised for the purpose of providing the means of sustaining the several departments and defraying the expenses of the corporation by the trustees, and some of it devoted to the support of roads, streets, etc., did not include a purpose of removing obstructions in a sidewalk if composed of accumulations of ice and snow. In this construction we think the superintendent erred.

It appears, therefore, that there were methods provided by law by which funds could be raised for the purpose, among other things, of keeping the streets and sidewalks in good order, and it does not appear that the funds which the trustees were authorized to raise for this purpose were insufficient or had become exhausted. This fact should have been shown if it existed. (*Hines* v. *City of Lockport*, 50 N. Y., 236.) No defense, therefore, is made out on the ground of a lack of funds.

There are no other questions, and I think the judgment should be affirmed, with costs.

LEARNED, P. J., concurred.

FISH, J., dissenting:

The first and perhaps the most important question to be decided is whether the action of Andrews in setting back the fence along the street had so far dedicated the land to the public that the village authorities *had control of the ground along the frontage of his barn ;* and had the village authorities so far accepted the dedication as to make it liable for injuries occasioned by its being left in a dangerous condition *at that particular place.* There does not seem to be much dispute about the facts.

To make a dedication complete there must be concurrent and mutual action on the part both of the owner and of the public authorities. There must be not only a setting apart and surrender to the public use, of the land by the owner, but also an acceptance by the public authorities to be evinced either by a formal opening or acts of user. (*Holdane* v. *Cold Spring*, 21 N. Y., 474; *Bridge Co.* v. *Bachman*, 66 id., 261.)

The acts and declarations of the owner must be unmistakable in their purpose and decisive in their character before it can be claimed that an owner has parted with his title so as not to be able

to reclaim it. And until there has been an acceptance, and both parties have taken definite action, the owner may change his purpose and reclaim his land.

Under the facts as proved, and which remain uncontradicted, I do not see how the village authorities could drive Andrews from the strip of land in front of his barns or compel him to remove obstructions, or, in fact, interfere in anywise with his jurisdiction over it. He owned the land and saw fit to set his fence back, throwing about thirty feet in width open, and which generally, as matter of fact, became and was used as part of an enlarged street. But the space in front of his barns he continued to use and has continued to use. The snow from his roofs has continued to slide off upon the ground along them, and he has been accustomed, as he saw proper from time to time, to remove the snow. According to the proofs, there has been no break in the user since he set back his fences.

Assume that there was a sufficient dedication of the general tract, if it was his mind and he so acted as to retain control of the space in front of his buildings, he continued to hold it as matter of right, even though foot passengers were allowed to pass over it and use it as a sidewalk. The use of the public was subordinate to his. This being so, the village corporation cannot be blamed for that part of the premises being out of repair, or even in a dangerous condition. So much of the land so thrown open by Andrews as was taken possession of by the village authorities and improved, including the sidewalks extending each way from his barns, may be regarded as irrevocably dedicated to the public use as a part of the street; but it is difficult to see how the *space in front of his barns, where plaintiff was injured, which Andrews had continued to occupy and use in the manner described, can be held to have gone beyond his control.* If there was any dispute as to the facts, the question might have been well left to the jury to say whether the dedication of the particular space in front of the barns was complete; but the facts in relation to his manner of using it are uncontradicted and undisputed. A jury would not be justified in finding the fact against the evidence. If this view is correct the recovery of plaintiff cannot be sustained, and it may not be necessary to review the other questions raised by the appellant.

There is, however, another difficulty in the way of plaintiff's recovery. The accident to plaintiff occurred in the day-time when the whole street was plain to be seen, a street sixty feet wide. The only obstruction complained of was the accumulation of snow hardened so as to become slippery, which occupied the space in front of Andrews' barns for about 100 feet. According to the strongest proof the bank of snow and ice was about three feet deep at the highest point. In passing over it the passenger was required to go up a grade of about five feet at either end, and get down the same distance at the opposite end. Whatever there was of it was plain to be seen. It is not claimed that the plaintiff had defective sight. Defendant's counsel requested the court to charge the jury that "if the defect complained of was such as would be seen by an ordinary person passing along the street, it was negligence for the plaintiff to attempt to pass over the defect." Also, "that if the obstruction was visible and apparent to any passenger, the plaintiff was guilty of negligence in attempting to cross it." The court refused to so charge and counsel excepted.

The meaning of the language of the requests as quoted may not be entirely clear if taken literally. But I think the fair import and scope of the language is to the effect that if the jury find as a matter of fact that the dangerous obstruction was plain to be seen by any person who approached it, including the plaintiff, she ought to have seen it and avoided it. And if under such circumstances she did not do so, but with the difficulty plain before her she attempted its passage, she took the risk of the attempt. And in such case the jury ought to find that she was guilty of contributory negligence. The law will presume that plaintiff had ordinary eyesight and capacity to see a dangerous place and was, in all respects, in the normal condition of ordinary people until the contrary is made to appear. If she had defective eyesight she should have shown it on the trial.

The decision at circuit implies that a passenger may encounter any dangerous obstacle in the highway or on the sidewalk, and with all the dangers attendant upon the attempt to pass over plainly apparent, and with plenty of room to pass around and avoid the dangerous ground, may yet make the attempt without incurring the charge of bringing upon himself or herself the result of the attempt.

It seems like an unsafe rule, and, if adopted as the law, will tend largely to exempt the passenger from the requirements of reasonable care and prudence.  Especially in this northern latitude, where ice and snow accumulate in the wintry season faster than man can remove it, it would seem that every person ought to be put on good behavior in that regard, and the law should bid people always to avoid danger when they can plainly see it ahead.  If they voluntarily and unnecessarily venture to make contact with the perils of the situation, they must assume all the risks attendant upon it.  It is not at all like unto the case where the true situation is not plainly discernable, and where the passenger has a right to rely upon the ground being safe and free from dangerous obstructions, as in the traveling ground in front of a railroad passenger station.

The plaintiff, in her complaint, charges that this bank of hardened snow and ice was raised above the level of the sidewalk in such a manner as to greatly endanger the life and limb of a passenger, and her proof is directed to showing that the place was dangerous to pass, and that it had been in that same situation for several weeks, and so long that the village authorities are chargeable with constructive notice of its condition.  The village is only liable after notice of the dangerous condition, and the notice in this instance is to be inferred from the long period it had so remained. If the village trustees are chargeable with notice, the plaintiff had the same opportunity to know.  The obstruction was one she could not help seeing.  The ruling in this case, in substance, holds that the plaintiff, knowing and plainly seeing that there was a dangerous place in the sidewalk, with ample room to pass around it (as plainly appears in the case), could nevertheless take the chances of danger in passing over it, and yet be entirely free from the charge of contributory negligence.  This does not accord with the spirit of the rule always maintained, that in places of danger it behooves the individual to exercise caution and prudence to avoid the danger when it can be avoided.

The only theory of a cause of action in this case is that the _locus in quo_ was a dangerous place, plain to be seen, dangerous to life and limb.  It had remained so long that everybody should be presumed to know it.  The plaintiff did know it.  I think in such case where the plaintiff, instead of going around and avoiding the

dangerous place, made the attempt to pass over it, she took the risk of all accidents and assumed all the perils of the attempt. (*Griffin* v. *The Mayor,* 9 N. Y., 456; *Durkin* v. *City of Troy,* 61 Barb., 437.) That was an action for an injury caused to plaintiff from slipping down on a sidewalk in the city of Troy. There was a recovery at the circuit, but the General Term, Third Department, reversed the judgment, and the learned judge who wrote the opinion of the General Term declares " the obstruction was therefore one to be avoided by those using the sidewalk, and seeing or being able to see the ice, and, if it could readily be avoided, the failure to avoid it by one using the sidewalk, and plainly seeing the obstruction, must be accounted negligence."

In that case, at circuit, the defendant's counsel requested the circuit judge to charge as matter of law, " if immediately previous to the accident the plaintiff knew or had noticed that there was ice there, and then took the risk of passing over there safely, he cannot recover." This request was refused and defendant's counsel excepted.

The General Term held this to be clearly errór, and in commenting upon it, the court say: " If the ice presented a dangerous obstruction, which the defendant was bound to do away, by removal or some other means, so that it was negligence on its part to leave it on the sidewalk, it must follow that it was negligence on the part of plaintiff voluntarily and unnecessarily to venture upon the dangerous obstruction, however carefully he might attempt to carry himself upon it." That case went back to the circuit where, on second trial, the plaintiff was nonsuited, and that ended the litigation.

Almost precisely this ruling has prevailed in the leading States of the Union, outside of New York. Massachusetts, Illinois and Pennsylvania have held to the rule above stated, and fixed it as a principle of law well settled. (See *Magill* v. *City of Erie,* 2 Am. and Eng. Corporation Cases, 579; S. C., 101 Penn. St., 616, a very modern decision by the Supreme Court of Pennsylvania.) There it was held, as matter of law, that " a foot passenger on the sidewalk of a city street, who with full knowledge of the dangerous character of an obstruction on the pavement, deliberately attempts to walk over it when he could have avoided it by a slight detour into the

street and who falls and is injured in such attempt is guilty of contributory negligence *per se.*" (And see, also, *Fleminy* v. *City of Lackhaven,* in Supreme Court, Penn., 19 Am. Law Review, 162.)

The leading cases relied on by the plaintiff in this case are not in conflict with the principle decided in *Durkin* v. *City of Troy* (*supra*). In *Evans* v. *City of Utica* (69 N. Y., 166) the judge at circuit charged the jury in substance as was requested in this case. As there was conflicting evidence as to whether the plaintiff in that case could see the danger before he got into it, the court left the question to the jury. In that case the accident occurred in the evening when it was dark and no lamps lighted. So in *Driscoll* v. *The Mayor* (11 Hun, 101) there was a hole in the sidewalk which plaintiff's intestate fell into and was thus injured and died. The accident occurred in the night time when it was difficult to see. And for that reason the court left it to the jury to say whether, even though she had before then known that the hole was there, her mind at that particular time might not have been so engrossed with business matters that from inadvertence she omitted to notice the hole. If in that case the dangerous spot had been a prominent object, and the party encountered it in the day time, the decision might have been different. So in *Thomas* v. *Mayor* (28 Hun, 110) the plaintiff was injured by a fall caused by a dangerous spot of ice in the sidewalk. He knew the ice was there a day or two before and avoided it. On the day of the accident it appeared that the sidewalk at that place was crowded, and he did not notice the ice until he came upon it. For that reason it was left to the jury to say whether under the circumstances he was guilty of negligence in making the attempt to cross. In the case of Mrs. Pomfrey, if the casualty had happened in the night time when it was so dark that she could not have seen or noticed the dangerous obstruction, or if there had been a crowd in the way so that her vision was obstructed, there might be some reason in regarding it as an open question of fact for the jury.

Under the circumstances of this case I think the court at circuit ought to have charged as requested or taken the still bolder ground, as the facts appeared, that, as matter of law, it was a case of negligence on the part of the plaintiff to attempt crossing the place that she knew and could plainly see was dangerous.

There are several other questions raised by the defendant's counsel relative to the admission of evidence on the trial, and a very grave question as to the powers conferred by defendant's charter, and the duty of defendant in clearing the sidewalks of ice and snow, which in view of the conclusion I have arrived at above I omit to examine.

I conclude the judgment ought to be reversed.

Judgment and order affirmed, with costs.