# Pittsburgh Southern Railway Company *versus* Taylor.

1. A traveler on a public road who does not avoid a known danger when he might have done so, is guilty of contributory negligence.

2. In case of a railroad accident, the company is entitled to a reasonable time in which to remove an obstruction thereby occasioned at or near a public road crossing.

3. In an action against a railroad company to recover damages sustained by reason of the plaintiff's horse taking fright at such an obstruction, evidence that the company delayed to remove the obstruction subsequent to the injury to the plaintiff, is irrelevant and inadmissible.

4. In such an action, evidence of the defective condition of the public road approaching the railroad crossing, is inadmissible.

5. It is error to leave the question of punitive damages to the jury when there is no evidence which would warrant a verdict for other than compensatory damages.

6. It is error to instruct the jury to allow interest on the damages they may award, from the date of the accident to the date of verdict.

7. The rule in determining proximate cause, that the injury must be such a natural and probable consequence of the alleged negligent act as might and ought to have been foreseen by the wrong-doer, is peculiarly applicable to accidents resulting from the fright of a horse.

8. Under all the evidence in this case the court should have directed a verdict for the defendant.

October 16th 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Washington county:* Of October and November Term 1883, No. 79.

Case, by Matthew Taylor against the Pittsburgh Southern Railway Company to recover damages caused by the alleged negligence of the defendant company, in allowing its cars, which had run off the track at a road crossing, to remain in such a position that plaintiff's horse took fright at them and ran away.

On the trial, the following facts appeared: Matthew Taylor, the plaintiff below, a farmer, living near Washington, Pa., about noon of December 16th 1879, accompanied by his wife, started to town with marketing, driving a family horse, which was ordinarily quiet. At the distance of a half mile from his home, the plaintiff crossed a branch of the defendant's railroad at which crossing, on the preceding night, several cars had run off the track and two of them were left upturned on their sides about fifteen feet from the public road, in such a position that they were likely to frighten horses. The plaintiff had been in-

formed that morning, by one Hughes, that the cars were off the track at the crossing.  It was shown that by going through one of his own fields he could have gone to his destination by another road and avoided the danger.  On nearing the over- turned cars, his horse frightened and shied.  He gave the reins to his wife and got down from the wagon, and led the horse up the approach to the railroad crossing, which was about thirty feet long and five feet high.  When the wheels of the carriage had cleared the track, the horse suddenly became unmanage- able, plunged violently forward, threw the plaintiff to the ground and ran away.  Taylor's arm was broken, his wife received painful, but not serious injuries, and the wagon was totally wrecked.

Plaintiff made the following offers:

1. " Plaintiff proposes to show, by this and other witnesses, that the cars remained in the position in which they were at the time of the accident, that is, upon their edge and one of them near and at the crossing, until the following Saturday, unremoved by the defendant company ; this for the purpose of showing a careless disregard, on the part of the company defendant, of the rights of the traveling public and as affec- ting the question of negligence, by which Mr. Taylor was injured."  Objected to by defendant.  Objection overruled. (First assignment of error.)

2. Question.  " What would be the character of that crossing in regard to danger if a horse would scare at an ob- struction ?"  Objected to by defendant.  Objection overruled.

Answer.  " The road had never been filled up properly, as it should have been, and a person, if his horse should scare, could not handle him properly ; and if he got a little too far to one side he would upset."  (Second assignment of error.)

Plaintiff requested the court to charge :

2. " That if the jury find from the evidence, that the cars of the defendant company went off the track sometime during the night of Monday, December 15th 1879, at or near the crossing of the public highway, that the said company was in law bound to be possessed of the proper appliances, by which they could at once remove them, if their position was an ob- struction to the highway or dangerous to persons passing by ; that they have no right to upturn the cars, or suffer them to be upturned, upon the dump, or fill, in a position to be a cause of fright to horses passing along said highway, and that, if the company suffered the cars to remain in that upturned position, they were guilty of culpable negligence and are liable for any injury which was the natural and probable result of such negli- gence."  Affirmed.  (Fifth assignment of error.)

Defendant requested the court to charge :

[Pittsburgh Southern Rw. Co. *v.* Taylor.]

2. "That there is no evidence in the case, that the cars ran off the track through the negligence of the defendant company or its employés." Refused. (Sixth assignment of error.)

7. "That if the jury find from the evidence in the case, that the plaintiff knew that the cars were off the track at or near the crossing, that the cars as placed were calculated to frighten ordinarily quiet and gentle horses ; that as plaintiff approached the crossing his horse showed that he was afraid of the cars; that plaintiff had another road, which was safe and convenient, by which he could have pursued his journey, it was contributory negligence on his part to persist in attempting to pass, and he cannot recover in this action." Refused. (Seventh assignment of error.)

9. "That under the evidence in the case the plaintiff is not entitled to recover in this action." Refused. (Ninth assignment of error.)

The court charged the jury, inter alia, as follows: "Unless you should be satisfied that the negligence of the company or that of its employés in bringing about this accident, was willful, reckless, or wanton, all the damages you can allow will be compensatory merely—such as would compensate him for his actual loss. If it was simply ordinary negligence, you cannot allow exemplary or vindictive damages, but simply such damages as would make the plaintiff whole, and I must say, gentlemen, that I do not see, myself, any evidence in this case, such as would satisfy a jury, or ought to satisfy a jury, that the company, by its employés, were guilty of any such gross negligence, that a jury might infer from it recklessness or wanton disregard for the rights of the plaintiff or the public. But this is a question· for the jury." (Sixteenth assignment of error.)

"Of course if you conclude that the injury to his (plaintiff's) right arm is permanent, you will have to inquire and satisfy yourselves, as well as you can, considering Mr. Taylor's age and time of life, what the loss of that right arm would be worth. You will find that along with your other damages and allow it with interest to this date." (Seventeenth assignment of error.)

Verdict for the plaintiff for $1,200 and judgment thereon. The defendant took this writ, assigning for error the admission of the evidence above complained of, the answers to points, and the portions of the charge above quoted.

*Geo. W. Guthrie* and *W. F. Wright,* for plaintiff in error.— There was no evidence whatever that the cars ran off the track through any negligence on the part of the defendant company, and the jury should have been so instructed : Phila. & Read. R. R. Co. *v.* Schertle, 1 Out. 454·; Mallory *v.* Griffey, 4 ·

Norris 275 ; Drayton v. North Pa. R. R. Co., 10 W. N. C. 55.
The evidence clearly showed that before the plaintiff started
from home, he knew about the cars, and that they were calcu-
lated to frighten horses, ordinarily quiet and gentle, and that
he could have gone by another road. He was therefore guilty
of contributory negligence: Forks Township v. King, 3 Norris
230 ; Perry Township v. John, 29 Smith 412 ; City of Erie v.
Magill, 12 W. N. C. 409 ; Carolus v. N. Y., 6 Bosw. 15 ;
Belton v. Baxter, 54 N. Y. 245 ; King v. Thompson, 6 Norris
365. Although the horse frightened at the cars, if his terror
was subsequently increased by some other object, the defendant
company was not liable: Hoag v. The Railroad, 4 Norris 293 ;
Railroad v. Kerr, 12 Smith 353 ; Railroad v. Hope, 30 Smith
373 ; City of Lancaster v. Kissinger, 11 W. N. C. 151 ; Scheffer
v. Railroad Co., 15 Otto 249. The admission of evidence to
show that the cars were allowed to remain in the same position
for several days after the accident was error : Penna. R. R. Co.
v. Henderson, 1 Smith 315 ; R. R. Co. v. McElwee, 17 Smith
311 ; McKee v. Bidwell, 24 Smith 218. It was error in the
court to instruct the jury that they should allow interest from
the date of the accident to the date of trial : Weir v. Alle-
gheny Co., 14 Norris 413.

*Boyd Crumrine* (*J. F. Taylor* with him), for defendant in
error.—What is negligence in a particular case, where the
standard of duty is not fixed by law, is a question for the jury :
Howard Express Co. v. Wile, 14 Smith 205 ; Fritsch v.
Allegheny City, 10 Norris 226 ; McKee v. Bidwell, 24
Smith 218 ; Penna. R. R. Co. v. White, 7 Norris 327 ; Crissey
v. Railway, 25 Smith 86. There is a presumption of negli-
gence on the part of the railroad company in allowing their
cars to run off the track : Edgerton v. R. R. Co., 39 N.
Y. 227 ; Curtis v. R. R. Co., 18 N. Y. 534 ; Ware v. Gay,
11 Pick. 106. A railroad company cannot exercise its
franchises in a way injurious to the rights of travelers on a
public highway : Western Penn. R. R. Co. v. Johnston, 9
Smith 294 ; Act of March 20th 1845, P. L. 191. If the fright
was caused by the cars, even though it was not the proximate
cause, the company is responsible for any damage resulting
from its negligence : Scott v. Hunter, 10 Wright 194 ; Pitts-
burgh v. Grier, 10 Harris 54. The presumption is that every
one exercises ordinary care, and whether this presumption is
rebutted is a question for the jury : Shearman & Redfield on
Neg. § 31 ; Penna. R. R. Co. v. Miller, 6 Norris 395 ; Fritsch
v. Allegheny City, 10 Norris 226 ; McKee v. Bidwell, 24
Smith 218 ; Penna. R. R. Co. v. Weiss, 6 Norris 447 ; Penna.
R. R. Co. v. White, 7 Norris 327 ; Crissey v. Railway Co., 25

Smith 86.   The plaintiff had a right to pass along the highway, and, observing ordinary care, he had a right to pass that crossing at the risk of the company which put the obstruction there: Shearman & Redfield on Neg. § 29 ; Lund *v.* Tyngsboro, 11 Cush. 563 ; Erie City *v.* Schwingle, 10 Harris 384 ; Pittsburgh City *v.* Grier, 10 Harris 54 ; P. B. & W. R. R. Co., *v.* Rohrman, 13 W. N. C. 259 ; Humphreys *v.* Armstrong County, 6 Smith 204 ; Lower Macungie Twp. *v.* Merkhoffer, 21 Smith 276.   Exemplary damages are allowable for gross negligence, authorizing the inference of willfulness, recklessness, wantonness : Shearman & Redfield on Neg. § 600 ; Dana *v.* Fiedler, 12 N. Y. 40 ; McIlvaine *v.* Wilkins, 12 N. H. 475 ; Walrath *v.* Redfield, 18 N. Y. 457 ; Parrott *v.* Ice Companies, 46 N. Y. 361.

Mr. Justice PAXSON delivered the opinion of the court, January 7th 1884.

In the court below, the plaintiff claimed damages from the Pittsburgh Southern Railway Company, for personal injuries to himself and wife consequent upon the alleged negligence of the company in allowing two of its cars to remain off the track an unreasonable length of time at the crossing of a public highway, thereby causing plaintiff's horse to take fright and run off, breaking his carriage and harness, and inflicting serious personal injuries upon his wife and himself.

It appears that on Sunday night, December 15th 1879, a train of defendant company's empty flat cars was being backed down its road to the Enterprise Coal Works, some three miles distant.   It was a dark, stormy night, and when the train reached the place where the Pittsburgh & Washington Turnpike road crosses the railroad, three of the cars ran off the track and were overturned.   An effort was made by the train hands to get the cars back on the track, but they only succeeded with one of them.   The other two were not removed until the following Saturday.   There was a fill of several feet in the turnpike road, to enable it to cross the railroad, and up the slope, caused by the fill, the carriage-way was narrow, say ten to twelve feet in width.   The two cars left were overturned mostly outside of the limits of the turnpike road, and wholly outside the traveled portion of it.   The plaintiff was a farmer, living about half a mile from this crossing.   The morning after the occurrence he started with his wife to drive over this road in a wagon with one horse.   He had previously been informed of the accident by Mr. Hughes, a neighbor, as will appear by the following extract from plaintiff's own testimony : " He (Hughes) told me there was some cars off the track, and that his horse had frightened at them, but I did not pay much atten-

[Pittsburgh Southern Rw. Co. v. Taylor.]

tion, for I did not know anything about the position of them, and I did not care very much, for I thought I had as quiet a horse as was in the country . . . I did not think there was any danger at all, I thought the horse was so very quiet." It also appeared that the plaintiff might have avoided the crossing by a way through one of his fields; one of the witnesses did so. When the plaintiff approached the crossing, the following is what occurred, taken from his statement on the witness stand: "When I came here, the horse stopped, as I said before; my wife wanted to know if she would get out; I told her I thought there was no danger, and I took the horse by the bit and walked rather before the horse, because if you lead a horse up to a thing he has more confidence: he kept his eye kind of on this obstruction, but did not appear to make any fuss, and followed me right up; just about the time the wheels got over the railroad track I stepped from before him to the side of him, but never unloosed my hold, but still had tight hold of him; just about the time the wheels got across, and as I stepped to one side, he kind of turned to me and threw up his head and leaped right off; I never saw such jumping; I held on to him; the ground was very steep, and I had not much more than this much room to hold the horse, and I could not have held him anyhow; my wife held on to the reins, and I held on, and we went down over this bank, and after we got down over this steep part to where it was level, and I got him a little to one side, I suppose my arm broke, and then the horse ran away; the horse ran about thirty rods on the straight road; there was another road came in there, and he turned off the main road and took through a post-and-rail fence; one wheel caught on the fence, and the horse burst right through and broke everything to pieces, and my wife fell among the fragments; I have no recollection of falling, but I got up and ran as fast as I could." Upon cross-examination, he said: "I did not say to John Slater or any other person that the horse did not scare at the cars; I said he scared at something; the horse knew that thing was back of him as well as I did, and he watched it all the way across; I said that he might have taken fright at the buggy and thought it was that thing after him; he might have thought the top of the buggy was the thing that he was afraid of; I was surprised as much at the horse scaring as any person."

The jury found a verdict for the plaintiff. Seventeen assignments of error were filed to the rulings of the court below. The questions involved in said assignments will now be considered.

We think it was error to permit the plaintiff to show that the cars were not removed for several days after they were overturned. The plaintiff was injured about noon on the day

following the night when the cars ran off the track. The inquiry should have been limited to that time. If the defendant company was not negligent in removing the cars before that time ; if with reasonable diligence it could not have been done before the plaintiff was injured, surely no subsequent neglect of the company could make them responsible to him, for the plain reason that such delay caused him no injury. And the delay would not prove, nor would it even tend to prove, that the obstruction could have been removed with reasonable diligence prior to the accident to the plaintiff. It has been ruled in Railroad Co. *v.* Henderson, 1 P. F. S. 315 ; Railroad Co. *v.* McElwee, 17 Id. 311 ; and in McKee *v.* Bidwell, 24 Id. 218, that where, after an accident, the defendant removes the alleged cause, it is to some extent an admission that he was in default. If we now hold that delay in the removal of the obstruction in a case where such delay produced no injury, is competent evidence, it would leave defendants a very slender chance before a jury. It would be evidence of negligence either way. A rule which necessarily leads to such results must be unsound.

It was also error to admit evidence in regard to the character of the crossing.. The defendant company were not responsible for the condition of the turnpike road, and if the fact were that at the point where it crossed the track it was dangerous, " if a horse would scare at an obstruction," it was a matter with which the company had no concern. Further, the condition of the turnpike road had nothing to do with the injury to plaintiff. The evidence was not only irrelevant, but hurtful. A jury would naturally infer that it was important because the court admitted it against the objection of the defendant. Too much care cannot be exercised in the trial of a cause before a jury to exclude all outside issues from their consideration.

There was manifest error in the answer of the learned judge to the plaintiff's second point. The effect of this ruling was to instruct the jury " that the said company was in law bound to be possessed of the proper appliances by which they could at once remove them, if their position was an obstruction to the highway, or dangerous to persons passing by," and also " that if the company suffered their cars to remain in that upturned position they were guilty of culpable negligence." This severe rule was affirmed without qualification. The obstruction must be removed " at once ;" if the upturned cars are suffered to remain for never so short a time, the company were guilty of culpable negligence. The point should have been refused and the jury instructed that the defendants were entitled to a reasonable time under all the circumstances of the case to remove the obstruction.

[Pittsburgh Southern Rw. Co. *v.* Taylor.]

By the defendant's second point they asked the court to instruct the jury that "there is no evidence in the case that the cars ran off the track through the negligence of the defendant company or its employees." This point the learned judge refused, and in his general charge said to the jury: "It was claimed there was no evidence whatever going to show that the company was guilty of negligence in allowing the cars to jump the track; but there is some evidence, gentlemen, tending in that direction, though I must say, for my part, I do not consider it very satisfactory, though that is for the jury. But if you are convinced that the company was guilty of negligence in putting green, unskilled hands on the train, and this jumping of the track occurred, and there was no contributory negligence on the part of Mr. Taylor the next day in passing along there with his horse, then the company would be liable."

I have examined the evidence with some care, and I have failed to find even a scintilla to show that the cars ran off the track by reason of the negligence of the defendant company. The only testimony upon this subject was offered by defendant, and tends to prove that the cars jumped the track by reason of the frozen mud. It was not contradicted. It is true the plaintiff proved the locomotive was leaking, and the train in charge of a green hand, but there was no evidence that either of these facts had any connection with the cars being overturned. The train approached the highway at an admittedly slow rate of speed, and it was not shown that any cause other than the frozen mud produced the accident. Hence it was clear error to say to the jury that if there were green hands on the train, "and this jumping of the track occurred," the company would be liable, in the absence of a word of testimony connecting the two events.

The defendant's seventh point raised the question of contributory negligence, and the learned judge was asked to say: "That if the jury find from the evidence in the case that plaintiff knew that the cars were off the track at or near the crossing; that the cars as placed were calculated to frighten ordinarily quiet or gentle horses; that as plaintiff approached the crossing his horse showed that he was afraid of the cars; that plaintiff had another road, which was safe and convenient, by which he could have pursued his journey, it was contributory negligence on his part to persist in attempting to pass, and he cannot recover in this action. This point the learned judge refused, saying, "The plaintiff had a legal right to pass over the highway, and if he used due precaution in passing the defendant's cars in order to prevent an accident, he was not guilty of contributory negligence."

The abstract right of the plaintiff to pass along the highway

notwithstanding the obstruction is admitted. It is not neces-
sarily involved in the case. It is outside of the true question.
A man is as much bound to avoid a known danger on a public
highway as anywhere else. Such obstructions are always liable
to occur ; the person or persons by whose negligence they have
been placed there or suffered to remain may be liable in dam-
ages to the parties injured thereby where they have used
reasonable care to avoid such injury, but it would be a harsh
rule to hold that because a man has a right to pass along a pub-
lic road that he is under no duty to avoid a known danger;
such is not the law. The contrary was ruled in Forks Town-
ship *v.* King, 3 Norris 230. In that case the plaintiff brought
an action against the township for injuries received under the
following circumstances : In descending a mountain four or
five miles from Forksville, along a dug way, the wagon slid off
the road, dragging the horses with it, and the mare of the
plaintiff was killed, either by the fall or by choking to death be-
fore she was extricated. The road was ten or twelve feet wide,
and the upper side was from six to ten inches higher than the
lower, with a uniform descending inclination from the bank to
the edge on the lower side. At this point there were no guard
logs along the edge for a distance of thirty or forty feet. There
was a spring on the upper side with a sluice way across, par-
tially stopped up, and the water flowed over the highway and
froze on the surface. Rain had fallen the day before the ac-
cident, the weather had become suddenly cold and ice had
formed to an extent to make traveling dangerous. For ten
days previously however, there was evidence that ice had been
accumulating, and it was alleged that the duty of the supervis-
ors to keep the highway in a safe condition had been wholly
neglected. On the trial the court admitted evidence that
plaintiff knew of the condition of the road, but rejected evi-
dence to show that he also knew of another road which he
might have traveled with safety. The rejection of the latter
evidence was assigned for error in this court, and the judg-
ment was reversed wholly upon that ground, Mr. Justice
Woodward saying: " A person who knows of a defect on a
highway and voluntarily undertakes to test it, when it could
be avoided, cannot recover against the municipal authorities for
losses incurred through such defect : Whart. on Neg. § 440.
Thus, if it appear that there is danger of treading on a piece
of ice, and the plaintiff voluntarily and unnecessarily under-
takes to walk over it, when he could plainly see it and easily
avoid it, and falls and breaks a limb, he is precluded from re-
covery : Durkin *v.* The City of Troy, 61 Barb. 437."

In the later case of the city of Erie *v.* Magill, 5 Out. 616,
the same doctrine was re-asserted. There, a foot passenger

[Pittsburgh Southern Rw. Co. v. Taylor.]

in the streets of a city attempted to cross a high ridge of snow, very slippery on the surface which sloped at an acute angle across a sidewalk into the street. While making this attempt she fell and sustained severe injuries. The undisputed evidence showed that the ridge had existed for about three weeks prior to the accident, and that it was commonly regarded as dangerous. Many passers by were in the habit of turning out into the street to avoid it. The foot passenger in question had previous knowledge of the condition of the ridge, and it was in the daytime that she attempted to cross it. In an action brought by her against the city to recover damages for her injuries it was held by this court : 1. That the plaintiff had been guilty of such contributory negligence as to preclude her right of recovery, and that the jury should have been so instructed ; and 2. That it was error in such circumstances to leave the question of contributory negligence to the jury. The opinion of the court was delivered by our brother GREEN, who cited several authorities which fully sustain the text, amongst which may be mentioned Wilson v. City of Charleston, 8 Allen 137 ; City of Centralia v. Krouse, 64 Ill. 19, and Butterfield v. Forrester, 11 East 60. It was said by Lord ELLENBOROUGH in the latter case : " A party is not to cast himself upon an obstruction which has been made by the fault of another and avail himself of it, if he do not himself use common and ordinary caution to be in the right."

The plaintiff knew when he started for this crossing that the cars were overturned by the roadside. He further knew that a neighbor's horse had taken fright at the cars that morning. By crossing one of his own fields he could have avoided the danger without inconvenience to himself. Why did he not do so? The answer is plain from his own testimony already cited. He trusted to his horse ; he did not believe there was any danger. "I did not think there was any danger at all ; I thought the horse was so very quiet, I was surprised as much at the horse scaring as any person." So that it appears from the plaintiff's own statement that although he knew the overturned cars were likely to frighten horses, and had, in point of fact, done so that morning, yet he did not regard the running away of his horse, the destruction of his wagon and the injuries to himself and wife as the natural and probable consequences to be apprehended from the obstruction. How then can he allege that the defendant company should have known it ? For unless he can establish this he cannot recover. In determining what is proximate cause the true rule is, that the injury must be the natural and probable consequence of the negligence, such a consequence as under the surrounding circumstances of the case might and ought to have been foreseen by the wrongdoer as

likely to flow from his act: Railroad Company *v.* Kerr, 12 P.
F. S. 353 ; Railroad Company *v.* Hope, 30 Id. 372 ; Hoag *v.*
The Railroad Company, 4 Norris 293. The soundness of this
rule has not been questioned, and I know of no case to which
it can be applied with greater propriety than to accidents re-
sulting from the fright of a horse. If we concede the right of
action to exist for such a cause, we must be careful not to relax
the rules of law applicable to cases of negligence, otherwise we
shall have a principle which if once established will, in my judg-
ment, be found difficult to confine within reasonable limits.
The frightening of a horse is a thing that cannot be anticipated
and is governed by no known rules. In many instances a
spirited road horse will pass in safety an obstruction that a
quiet farm horse will scare at. A leaf, a piece of paper, a
lady's shawl fluttering in the wind, a stone or a stump by the
wayside, will sometimes alarm even a quiet horse. I may mention
by way of illustration that the severest fright I ever knew a
horse to feel was caused by the sunlight shining in through
the window of a bridge upon the floor. As a general rule a
horse will shy at what he is not accustomed to seeing. As was
said by a witness in this case : " A horse is more apt to scare at
things out of place, or that he is not used to." Other witnesses
said : " It was an unusual thing there, sticking up so high,"
and gave that as the reason for the scare of the horse. The
difficulty of dealing with a question of this kind in a practical
way is apparent. An illustration of it may be found in the
answer of the court to the defendant's eighth point. By said
point the learned judge was asked to instruct the jury : " That
if the jury believe that the horse had safely passed the cars ;
that the immediate cause of the runaway, was the horse being
frightened by the carriage top, or some object other than the
cars, defendant is not liable in this action." This point was
answered as follows : " If the cars had nothing to do with the
horse taking fright in the first place the position assumed in
this point would be correct. But if he was frightened by the
sight of the cars, and afterwards increased by his mistaking the
carriage top or some other object for the cars, and then in his
terror broke away from the plaintiff, the company would be
liable."

This was throwing a question of fact into the jury box
which by no possibility could be determined by them except
by a guess. The horse had passed the obstruction in safety,
and according to the plaintiff's own statement, without being
seriously alarmed. He then saw the carriage top or something
else, and commenced jumping. How was it possible for the
jury to ascertain the mental operation of the mind of the horse,
whether we call it instinct or reason ? There is no method for

[Wimer v. Worth Township.]

photographing such a thing, and the horse itself was an incompetent witness. No question of fact is too difficult for a modern jury, but a fact found without any means to ascertain it correctly is not entitled to much weight. The moment we reach a point in the trial of a cause where a question of fact becomes vital, and from the nature of things there is no method known to the law by which such fact can be correctly ascertained, it is time for us to pause and examine our bearings.

There was no dispute as to any of the facts contained in the defendant's seventh point. The learned judge ruled that they did not amount to contributory negligence. In this we think he was mistaken. The point should have been affirmed.

The jury should have been limited to compensatory damages. The learned judge admitted there was not evidence to justify vindictive damages, yet left that question to the jury. This was error.

It was also error to permit the jury to allow interest from the date of the accident to the time of trial upon the amount they might ascertain plaintiff's damages to have been. This was ruled in Weir v. The County of Allegheny, 14 Norris 413.

By the defendant's ninth point the court was asked to instruct the jury: "That under all the evidence in the case the plaintiff is not entitled to recover in this action."

This point was refused. For the reasons already given we are of opinion it should have been affirmed.

Judgment reversed.