F. B. HAZEL v. PEOPLE'S PASS. RY. CO.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS NO. 3 OF PHILADELPHIA COUNTY.

Argued January 9, 1890—Decided February 3, 1890.

[To be reported.]

1. Where, in an action against a passenger railway company to recover damages for the death of a horse through the alleged negligence of the defendant, there is no evidence connecting, or tending to connect in any culpable manner, the defendant company with the death of the horse, it is error to submit the case to the jury.

2. Street-car companies, having as much right to run cars on the streets of the city as other citizens to drive through them with their horses and carriages, are not responsible for horses taking fright at the movements of their cars: Piollet v. Simmers, 106 Pa. 95; Pittsb. etc. Ry. Co. v. Taylor, 104 Pa. 306.

Before STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Charge of Court below.

No. 353½ January Term 1889, Sup. Ct.; court below, No. 487 December Term 1886, C. P. No. 3.

On December 4, 1886, Franklin B. Hazel brought case against the People's Passenger Railway Co., to recover damages for the killing of a horse by the alleged negligence of the defendant company. Issue.

At the trial on October 25, 1888, the case shown was in substance as follows: On November 20, 1886, the plaintiff's horse and carriage were driven to the east side of Fourth street north of Walnut and left standing in charge of a driver. While there, one of defendant's horse-cars came down Fourth street, and as it turned into Walnut the car jumped the track, about twenty feet from the point where plaintiff's horse and carriage were. To get the car back upon the track, the driver unhooked the horses from it and hitched them to the rear end, and with aid of bystanders the car was pulled into position. There was somewhat of noise, both in putting the car upon the track and occasioned by passing teams and carriages. About the time the car was replaced upon the track, the plaintiff's horse suddenly reared in the shafts and fell upon the street dead. One of plaintiff's witnesses testified that "the horse was frightened by the approaching car and noise." There was no post-mortem examination. On the part of the defendant there was testimony that a man had come out of a store near by, and as he stepped into the street the mirror flashed the sun-light into the horse's eyes.

The court, FINLETTER, P. J., submitted the case to the jury upon the evidence, and answered points presented by the defendant as follows:

1. Unless the jury find that the employees of the company knew that the natural and probable consequences of pulling and pushing the car back on the track, in the manner in which it was being done, would be to frighten horses not more than usually nervous, the plaintiff cannot recover.

Answer: Refused.[1]

2. Unless the jury find that the car was put back upon the track by the employees of the company, with such unnecessary and excessive noise as to be likely to frighten horses not more

Arguments.

than usually nervous, such horses as might be expected to be upon the street in that vicinity, the plaintiff cannot recover.

Answer: Affirmed.

3. If passers-by voluntarily, and without the request of the employees, took hold of the car to run it back upon the track, and by their noise frightened the plaintiff's horse, the company is not liable.

Answer: Affirmed.

4. There is no evidence that the death of the plaintiff's horse was caused by any negligence or default of the defendant or its employees.

Answer: Refused.[2]

5. Under all the evidence in the case the plaintiff is not entitled to recover.

Answer: Refused.[3]

The jury returned a verdict for the plaintiff for $250. A rule for a new trial having been discharged, judgment was entered, when the defendant took this appeal, assigning for error:

1-3. The answers to defendant's points.[1 to 3]

*Mr. George P. Rich* (with him *Mr. Mayer Sulzberger*), for the appellant:

There was not a particle of testimony to justify this verdict. The defendant did not act negligently or improperly. The injury was not the natural or probable result of its action; and if it had been, the plaintiff was guilty of contributory negligence. The verdict could have been rendered only " on the communistic principle that as somebody was hurt, somebody else, right or wrong, ought to pay for it:" Fox v. Borkey, 126 Pa. 164. It was said in that case that it is the duty of courts " to handle such cases without gloves." To hold the company liable as a wrongdoer it must appear that the frightening of the plaintiff's horse could have been foreseen and expected as an ordinary or natural or probable result of its act in replacing the car in the way in which it was done: Pittsburgh etc. Ry. Co. v. Taylor, 104 Pa. 306; Piollet v. Simmers, 106 Pa. 95; Pass. Ry. Co. v. Trich, 117 Pa. 390; Fox v. Borkey, 126 Pa. 164.

Opinion of the Court.

*Mr. Robert N. Simpers*, for the appellee :

There was no error in the court's refusal to affirm the defendant's first point.  The employees of the company were bound to know the natural and probable consequences of their acts, and, whether they did so know or not, the company is liable if they were guilty of negligence in replacing the car, and the death of the horse was the natural result of that negligence.  There was evidence in the case which it was proper to submit to the jury.  To have affirmed the defendant's fourth and fifth points, would have been clear error.  The cases of Pittsburgh etc. Ry. Co. v. Taylor, Pass. Ry. Co. v. Trich, and Fox v. Borkey, cited by the defendant, are not applicable to this case.

OPINION, MR. JUSTICE GREEN :

After having read and re-read the whole of the testimony in this case, we are constrained to say that we are entirely unable to discover any evidence connecting, or tending to connect, in any culpable manner, the defendant with the death of the plaintiff's horse.  The horse, geared to a carriage and in charge of a driver, was standing quietly at the east side of Fourth street, near Walnut, at about 2 o'clock in the afternoon.  Suddenly, and without the least preliminary movement, he reared upon his hind feet, and fell over, dead.  It is a very busy and thronged part of the city ; many persons and vehicles were constantly passing to and fro.  The ordinary noises of the street occurred, but of no unusual character.  The horse belonged to, and was constantly used by the plaintiff, who was a physician, in traversing the city, and had been so used for two years prior to the accident.  When the horse fell, he was instantly dead.  No post-mortem examination of his body was made.  There was no evidence that his skull was fractured, or that any bones were broken, or that any wound or bruise of any kind was found upon the body.

What was the cause of his death?  Nobody testifies on that subject, and the probability is nobody knows.  The horse was not struck by any object.  One witness said he struck his head on the curbstone when he fell ; but neither this nor any other witness examined his head to see if it had been injured, or testified that any injury was inflicted by the fall.  If the horse was in good health, and unaffected by any sudden and

fatal malady, it is very difficult to understand how he could fall over to one side merely from the fact of his rearing on his hind feet. He was harnessed to a carriage; and that circumstance, and the mere force of gravitation, would restore him to his natural, erect position as his front feet descended. Why, then, did he fall over on his side, and why did he rear? Upon these subjects the case is absolutely barren of testimony. Yet, without proof, and proof of a satisfactory character, as to the rearing, the falling, and the death of the horse, there is no foundation for a judicial sentence either as to the cause of the death, or of the responsibility for it. The death of the animal was by no means a necessary consequence of his fall. In fact, it is most unusual; so unusual that the writer has never heard or known of a case in which a horse or other animal was killed simply by falling to the ground. Without further proof that the fall inflicted an injury, from which injury death might have resulted, it is nothing but conjecture, without evidence, to say that the fall was the cause of the death. But conjecture, without evidence, is not a permissible basis for a judicial decree.

It will be seen at once, therefore, that this case is fatally deficient in its failure to furnish some kind of proof, not conjecture or inference, as to what was the real cause of the horse's death. If, however, it were really established, by competent testimony, that the death of the horse was directly due to his fall, but very little progress would be made in connecting the defendant with the fall. Perhaps the horse fell because he had reared; but perhaps, also, he fell because he was stricken with a sudden and fatal malady, and was already dead when he reached the ground. Amongst human beings such things are occurring every day, and in all parts of the country; and it is notorious that horses are affected by many diseases that are common to the human race. As to the death of this particular horse, there is nothing but theory in the case; and the theory of death from some sudden and fatal attack of disease is more consistent with the actual facts in evidence, than is the theory that the death was the result of the fall alone.

But, if it be conceded that the horse died from the fall, what had the defendant to do with the fall? A theory is also offered upon this subject, and the jury was allowed to act upon the basis of that theory in making up their verdict. It was this:

that the horse took fright at the movement of one of the de-
fendant's street cars, and the car caused the horse to become
frightened, and the fright caused him to rear upon his hind
feet, and the rearing caused him to fall, and the fall caused his
death. Every step in this process is the merest and baldest
theory, without any actual substantial fact to support it; and
the last step mentioned is perhaps the weakest and most un-
substantial of all. Who knows, or can truthfully say, that
the horse was frightened at all? The driver, who had the
horse in charge, does not say so, and he does not testify to any
fact that proves it. On the contrary, the facts he does state
tend to disprove it. He does not say that the horse plunged,
or shied, or ran away, or tried to run away, or to get away at
all, from the place where he was standing. On the contrary,
he said: "The horse reared up and fell. I do not know if the
car struck him or not. The horse fell, and died in a few min-
utes. . . . . When the horse reared, I could not tell what to
do; it was so sudden, I could not have gotten out of the car-
riage. . . . . When my horse reared and fell, the car-horses
were about fifteen or twenty feet from my horse. . . . . He
was dead as soon as he fell. He just reared up and fell, and
then he was dead." Howell, another of plaintiff's witnesses,
said: "I had seen the horse standing there quiet. I then saw
the horse rear, and fall, and strike his head. He was dead in
a few minutes." Hamilton, another witness of plaintiff, said:
"I saw the horse standing quiet. Then I saw him rear up,
and fall, and strike on the curbstones. He just reared up and
fell; never moved." These were all of the witnesses exam-
ined by the plaintiff as to the fact of the accident. They are
corroborated by those of the defendant as to the quietness of
the horse up to the moment he reared and fell.

But suppose the horse did take fright at the street car. It is
certainly not true in law that street car companies are respon-
sible for horses taking fright at the movements of their cars.
They have just as much right to run cars on the streets of the
city, as other citizens have to drive through the streets with
their horses and carriages. We discussed this subject suffi-
ciently in Piollet v. Simmers, 106 Pa. 95, and Pittsb. etc. Ry.
Co. v. Taylor, 104 Pa. 306, to render any further discussion of it
unnecessary. The idea that the car had run off the track, and

was being restored to the track when the accident occurred, and therefore the horse became frightened, does not help the case in the least. All the witnesses testified that there was nothing unusual in the movements to restore the car to the track. It was only off a few feet. The horses were brought from the front, and attached to the rear end of the car, and pulled it back. The plaintiff's driver testified: "The driver was making the usual sounds to start the horses. The noises were the usual noises where a car is off the track, and people were trying to get it back." Hamilton says: "They took the horses to the rear end, to pull it back. They made a noise, about the same noise as is usually made when a car is off the track." Howell said: "The bystanders were pushing the car, and making a noise. The noise was the ordinary sounds of people trying to get the car pushed back." Upon the plaintiff's own proof, therefore, there is an utter failure to establish any negligence on the part of the defendant in causing the death of the horse. The movement to restore the car to the track was the usual, ordinary movement to bring about that result; and the sounds and noises, such as they were, were those which ordinarily occur upon such occasions. The case is simply and absolutely destitute of testimony establishing any relation of cause and effect between the acts of the defendant and the death of the plaintiff's horse, in a sense in which the defendant can be held responsible. We are clearly of opinion that the defendant's fourth and fifth points should have been affirmed, and a verdict directed for the defendant.

Judgment reversed.