# Martha G. Boatwright *v.* The Chester & Media Electric Railway Company, Appellant.

*Negligence—Street railways—Disorderly conduct of passengers—Measure of company's liability—Respondeat superior.*

A railway company is not liable for an accident which results from sudden noise and disorder on the part of a body of passengers, which disorder in the exercise of sound judgment and discretion, it was not obliged to anticipate or provide against. The doctrine of respondeat superior does not apply.

*Negligence—Street railways—Riotous conduct of passengers—Proximate cause—Question for jury.*

The sudden outburst of passengers on a trolley car frightened a well broken horse not afraid of such cars as usually conducted, and the horse ran away and upset the wagon. *Held,* That the failure or inability of the conductor or motorman to stop the unexpected demonstration was not such proximate cause of the injury as would render the railway company liable, and that it was error to leave to the jury the question whether the company's employees permitted the passengers to indulge in such conduct as would frighten an ordinarily well broken horse.

Argued, Nov. 19, 1896.    Appeal, No. 139, Nov. T., 1896, by defendants, from judgment of C. P., Delaware Co., Sept. T., 1895, No. 259, on verdict for plaintiff. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Reversed.

Trespass for personal injuries. Before CLAYTON, P. J.

The facts sufficiently appear in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $1,000. Defendant appealed.

*Error assigned* was, refusal of defendant's first point, viz: "Under all the evidence in this case the verdict should be in favor of the defendants." *Answer*: This point is negatived.

*W. B. Broomall,* for appellant:—The right of a company to construct and operate its road along the street carries with it the right to do whatever is necessary for the successful operation of the road, so that the company is not liable for injuries

caused by horses becoming frightened at its cars unless it can be shown that the fright was caused by some unusual sight or sound which the company was negligent in creating: Hazel v. Railway Co., 132 Pa. 96: 23 Am. & Eng. Ency. of Law, 1031.

The proximate cause of the fright of the horse in this case is the acts of the passengers, and the doctrine of proximate cause is especially applicable to accidents resulting from the fright of a horse: Railway Co. v. Taylor, 104 Pa. 306; Yingst v. Railway Co., 167 Pa. 438.

It is submitted that there is no principle of the law which subjects a street railway company to liability to a person on the highway for the disorderly conduct of its passengers.

*George T. Butler* and *William W. Porter*, for appellee.—As to the question of negligence arising from the behavior of the motorman or driver of a car, see Railway Co. v. Mulhair, 6 W. N. C. 508; Johnson v. Railway, 160 Pa. 647; Wheelahan v. Traction Co., 150 Pa. 187; Railway Co. v. Steinhart, 2 Penny. 358.

As to the question of noise made by the passengers on the cars, it is undoubtedly the law that a railroad company and likewise a surface railway company must exercise its rights with a considerable and prudent regard for the rights and safety of others, as has been decided in those cases where accidents have arisen from the negligent blowing of locomotive whistles; see Penna. R. Co. v. Horst, 110 Pa. 226; Phila. & Reading Ry. Co. v. Killips, 88 Pa. 405 ; P., W. & B. R. R. v. Stinger, 78 Pa. 226.

In this case a horse was frightened by an unusual and terrifying noise, which passengers riding upon the defendant company's cars were allowed to make while upon the public highway where at any moment teams might be expected to pass. The company has a right to run its cars along the road for the carrying of passengers, but it must do so with a proper regard for the safety of others. A railroad company has a right to blow its whistles ; but a railroad company is responsible for the result of accidents by blowing its whistles at improper places, because there it is an unwarrantable act and is done in disregard of the safety of others. Street car companies in carrying passengers along the public highway if they allow them to behave in a

noisy and turbulent fashion which, from its unusual character, will probably result in alarming passing horses, are exercising their rights in a careless and negligent fashion, without regard to the safety of others, and are, therefore, liable for resulting injury.

If the company had no control over the behavior of its passengers, this probably would not be the case; but as to that point the Supreme Court has already expressed itself, and has decided that a railroad company is responsible for an injury caused by the improper behavior of its passengers: Railroad Co. v. Pillow, 76 Pa. 510; Railroad Co. v. Hinds, 53 Pa. 512.

Under these decisions the company's employees, when they found the passengers were behaving in an improper manner and would not behave, could have stopped the cars and, if necessary, used force in putting the passengers off.

It is shown by the evidence, particularly of Lizzie Brandt, that the unusual noise caused the horse to run away, and as in the case of the improper sounding of a locomotive whistle, whereby accident was caused, that would be a sufficient proximate cause for the injury to render the company liable: Penna. R. R. Co. v. Barnett, 59 Pa. 259.

OPINION BY WILLARD, J., April 12, 1897:

A road known as the Providence Road runs north and south through the borough of Media; it is from thirty-five to forty feet wide. The appellant's track over which its cars run, is located on the eastern side of the road. Its main route is between Chester and Media. About three hundred feet north of a steam railway track there is a switch or turnout leading from the Providence Road into the South Media road, and north of the point where the track begins to diverge, and one hundred and sixty feet distant is a blacksmith's shop, fronting on the western side of the Providence Road. This shop extends back to the South Media road. Where the trolley car track crosses the steam railroad there is a bridge.

Between eight and nine o'clock on the evening of August 14, 1894, an excursion train of three cars in charge of a motorman and two conductors was moving northward over the Providence Road and turned into the switch connecting with the South Media road.

There was an excursion party of two hundred and twenty-five (225) persons in the cars. There was evidence that the cars were running fast and that the motorman was not looking up the Providence Road. There was also evidence that the cars were moving at their usual rate of speed, and that the motorman before and at the time of the accident had his eyes upon the track in front of him. There was also evidence that the passengers on the cars from the time they crossed the bridge to the place of the accident were blowing horns, hooting, screeching, screaming, singing, waving hats and flags. This evidence was denied by the motorman and one of the conductors, and by several passengers on the cars at the time. On the evening in question the appellee was, in company with Miss Lizzie Brandt, riding with her at her invitation and was moving along the eastern side of the Providence Road going south in a buggy drawn by a horse perfectly manageable on all ordinary occasions, accustomed to and in no way afraid of trolley cars. The evidence also discloses that Miss Brandt was accustomed to drive this horse and buggy both day and night, and for many months prior to this time had experienced no trouble in so doing. As she came to the blacksmith shop she heard the noise of the approaching excursion and stopped her horse at that point, waiting for the cars to pass. The allegation of the appellee is that the horse took fright at the noise of the approaching cars, became entirely unmanageable and darted in the direction of the approaching car, running alongside of it until between the rear of the blacksmith shop and a telegraph pole the buggy collided with the car, was upset and the appellee seriously injured thereby.

The learned trial judge instructed the jury that there was not sufficient evidence of negligence on the part of the appellant by reason of the speed of the train or the conduct of the motorman in not looking in the right direction to sustain a verdict. On the question of the conduct of the excursionists the jury were instructed as follows, " I say to you, as a matter of law, that if the company or its employees (for the company is liable for the conduct of its employees), did permit the passengers upon their cars to indulge in riotous conduct, to wave flags, to scream, to sing, to hallo and to blow horns, to such an extent as would frighten an ordinary well broken horse, then the company is liable ; and that will be the simple question for you to

decide." There was a verdict for the plaintiff in the sum of $1,000.

The only error assigned is the refusal of the court below to give binding instructions to render a verdict for the defendant.

The precise question raised by this record has not been passed upon by our Supreme Court.

As to the rights of the respective parties there is no question. The appellee had a right to drive with her companion upon the road in question and she assumed no greater risk than any other person riding in a buggy drawn by a well-broken and trusty horse accustomed to trolley cars. She had a perfect right to be upon this road and to drive upon it in an orderly manner. The appellant had an equal right to occupy the road with their cars and other appliances necessary to carry out the end and purpose of their incorporation. They had the right to reasonably speed their cars in order to make such schedule time as public necessity and convenience demanded, and to make such noise and exhibit such lights as result from the ordinary running of electric motors and cars upon the public streets; and if, as a consequence thereof, horses are frightened and run away there can be no recovery for any damages sustained by reason thereof: Hazel v. Pass. Railway Co., 132 Pa. 96; Yingst v. Lebanon Street Railway Co., 167 Pa. 438.

The horse was frightened on account of unusual noises made by the passengers on the trolley cars. The injury was the result of the running away of the horse and the collision of the vehicle drawn by it with one of the cars. The proximate cause was the unusual noise of the passengers that frightened the horse. For this conduct of the passengers the jury was instructed that the appellant company was liable on the ground that the two conductors did not stop the noises of an excursion party of two hundred and twenty-five people, therefore the company was liable for the injury.

If the company deliberately loaded its cars with excursionists equipped with horns and flags, knowing they intended to wave flags and blow horns along the route, and thereby frighten horses lawfully upon the highway, for such conduct it might be held liable. Or if it knowingly permitted such demonstrations from time to time as a part of its business upon the road so as to become a nuisance and constant menace to persons driving vehi-

cles upon the highway, they undoubtedly would be liable for the result of such nuisance and menace. But there are no such circumstances in this case.

The excursion party was taken upon the cars and each member of the party was a passenger entitled under his contract of carriage to be conveyed safely to his place of destination. There was no evidence that the company, its conductors or employees anticipated any unusual noise on the part of the passengers. Supplied with a motorman and two conductors the cars were running upon usual schedule time under proper employees to manage the cars and attend to the necessities of the passengers in them under all ordinary circumstances. The company was under no obligation to provide a police force in anticipation of riots. The evidence shows that when the cars were at the bridge, the passengers became noisy and the horse was suddenly frightened by the noise, became unmanageable and ran away. To say that under the facts of this case the failure or inability of the conductors or motorman to stop the noise while the cars were going from the bridge to the turnout was such proximate cause of the injury as to render the appellant liable, is carrying the doctrine of proximate cause beyond its legitimate limit. Under the facts in this case the persons who caused the noise that frightened the horse are alone responsible, and their neglect and misconduct under the circumstances cannot be imputed to the appellant.

The appellant is charged as a wrongdoer in causing the appellee bodily injury, and in order to recover, the injury complained of must have been inflicted or caused by the negligence of the appellant, or its act or negligence or the act or negligence of its employees must have been the proximate cause of the injury. In Pittsburg Southern Railway Co. v. Taylor, 104 Pa. 306, it was said by Mr. Justice PAXSON " In determining what is proximate cause the true rule is, that the injury must be the natural and probable consequence of the negligence, such a consequence as under the surrounding circumstances of the case might and ought to have been foreseen by the wrongdoer as likely to flow from his act. The soundness of this rule has not been questioned, and I know of no case to which it can be applied with greater propriety than to accidents resulting from the fright of horses." Applying this rule to the facts of this

case how can it be said that any act of the appellant or its employees as presented in the testimony, was the proximate cause of the injury to the appellee?

Pittsburg, Fort Wayne and Chicago Railroad Company v. Hinds, 53 Pa. 512, cited by the appellee, was an action against a common carrier of passengers, for an injury to a passenger by one of a mob of drunken men who suddenly invaded a car. While a recovery in that case was not sustained, Woodward, C. J., there said: " The only ground on which the carrier can be charged is a violation of the contract of carriage made with the injured party." It was also said in the same case, " there is no such privity between the company and the disorderly passenger as to make the company liable on the principle of respondeat superior."

This case considered upon its facts, is not one in which the appellant should be held liable for the acts of those not in its employ. The sudden outburst of passengers in a noisy demonstration was not an occurrence that the appellant was bound to anticipate or provide against. The cases cited by the appellee where railroad companies have been held liable for frightening horses by the unnecessary blowing of steam whistles by their engineers and firemen on bridges or highways are not in point; there the injury was the unnecessary and wanton act of an employee while engaged in his master's business, while here the act was that of disorderly passengers between whom and the appellant the principle of respondeat superior has no application. While it would be difficult to prescribe a rule applicable to all cases, it would be most unreasonable to hold the appellant liable for the injury in this case.

A rule that would hold this appellant liable for the result of the sudden noise on this occasion, which in the exercise of sound judgment and discretion it was not obliged to anticipate or provide against, we are not prepared to establish or sanction. The question of the position and action of the motorman in the management of his car and the speed of the car having been withdrawn from the jury, the first point of the plaintiff should have been affirmed. The specification of error is sustained and the judgment reversed.