# Francis Davison *v.* The Wilkes-Barre and Wyoming Valley Traction Company, Appellant.

*Street railways—Fright of horse—Negligence.*

The right of a street railway company to run its cars at a proper rate of speed, with the incident noise and air current, is not less than the right of a citizen to drive his horses; and the company is not responsible for the fright of the horse at the ordinary movements of the car.

*Proximate and remote cause—Street railways—Fright of horse.*

Where the fright of a horse was the proximate cause of an accident, the speed of the car, the breeze thereby created, and the blowing of the plaintiff's hat against the animal are remote causes, neither necessarily nor directly tending to bring about the accident, and a railroad company cannot be required to anticipate and guard against such a succession of occurrences.

Submitted Jan. 10, 1899.    Appeal, No. 31, Jan. T., 1899, by defendant, from judgment of C. P. Luzerne Co., Dec. T., 1892, No. 364, on verdict for plaintiff.    Before BEAVER, ORLADY, SMITH, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Reversed.    Opinion by SMITH, J.    ORLADY and W. W. PORTER, JJ., dissent.

Trespass for injuries to a horse resulting from alleged negligence of defendant company.    Before LYNCH, J.

The facts sufficiently appear in the opinion of the court.

Verdict and judgment for plaintiff for $83.00.    Defendant appealed.

*Error assigned* among others was in not instructing the jury to find for the defendant.

*Henry A. Fuller* and *John T. Lenahan*, for appellant.—Appellant does not seek a new trial, but absolute reversal of judgment, because the question of negligence was improperly submitted upon a specification of cause not averred in the declaration, impossible in fact, remote in law, and disclosing contributory negligence.

The undisputed evidence shows that the horse suddenly moved from a safe place and put itself immediately in front of the car, without any warning.    Collision, therefore was inevitable, and must have occurred whether the car was running eight or twenty miles an hour, at a reasonable or an unreasonable rate of speed, negligently or otherwise.    Hence, it is clear that defendant's negligence did not cause the accident, and the case should have been taken from the jury: McManigle v. R. R. Co., 181 Pa. 358.

The proximate cause was the collision of car with horse, which was unavoidable, and in which negligence was not a factor.

The remote cause was the speed of the car.

Between proximate and remote intervened the following: (*a*) hat blown from the head of a man standing on the sidewalk ten to fifteen feet distant; (*b*) blown against horse between man and car; (*c*) fright of horse; (*d*) movement of horse in front of car. See statement of rule and citations in Swanson v. Crandall, 2 Pa. Superior Ct. 85.

Application of the rule in the following cases selected from hundreds which might be cited, should decide the case at bar: The S. S. Pass. Ry. Co. v. Fich, 117 Pa. 390; Hoag v. R. R. Co., 85 Pa. 293; Penna. R. Co. v. Kerr, 62 Pa. 353.

Finally, we submit that plaintiff's act in permitting the horse to stand thus loosely tied, in close proximity to the track, upon a narrow street, where any fatuous movement of the animal might easily bring it in collision with a car, was contributory negligence per se of the plainest kind. No man of ordinary prudence would have been guilty of such carelessness. The act was unaffected by any circumstances which might vary or shift the standard or degree of care. The facts are undisputed, and therefore should not have been submitted to the jury, but construed by the court, in accordance with the test of contributory negligence per se, which is well defined in Lehigh Valley Railroad Co. v. Greiner, 113 Pa. 600.

*M. H. McAniff* and *John McGahren*, for appellee.—A street railway car must be kept well in hand and the speed must not be so great as to make this impossible or to endanger the safety of the public using the streets with care: Yingst v. Railway Co., 167 Pa. 438; Kline v. Railway Co., 181 Pa. 276.

In the case of McManigle v. Railroad Co., 181 Pa. 358, the car was stopped between twenty and forty feet after the accident. In the case at bar according to the testimony of the plaintiff's witnesses the car ran seventy-two paces after it struck the horse before it was stopped. Where a car ran 300 feet after it collided with a wagon the question of the company's negligence is for the jury: Thatcher v. Railroad Co., 166 Pa. 66.

The inquiry should always be, was there any intermediate cause disconnected from the primary fault and self-operating which produced the injury? When there is no intermediate, efficient cause, the original wrong must be considered as reaching to the effect, and proximate to it: Vallo v. Express Co.,

147 Pa. 404; Milwaukee & St. Paul Railway Co. v. Kellogg, 94 U. S. 460; Ehrgott v. City of N. Y., 96 N. Y. 264.

The question is was there an unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a continuous succession of events so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? This question is not one of science or legal knowledge. It is to be determined as a fact by the jury, in view of the circumstances of fact attending it. It is not a question for the decision of the court: Lehigh Valley R. R. Co. v. McKeen, 90 Pa. 122; Penna. and New York Canal and R. R. Co. v. Lacey, 89 Pa. 458.

OPINION BY SMITH, J., July 28, 1899:

This case arose from an accident which, as related by the plaintiff, presents some unusual features. The plaintiff's horse and wagon stood on the street, near the curb, the horse tied to a telegraph pole; a mare, owned by the plaintiff, was tied to the rear of the wagon, on the side next the curb, the tie being about eighteen inches long; the plaintiff stood close by the mare, on the side next the street; a trolley car, on a track eleven feet from the curb, approached from behind at a speed of twenty miles an hour; the "waft of the car"—the air current arising from its motion—blew the plaintiff's hat off, against the mare; the animal thereupon jumped, throwing her hind feet around near the track, the fender of the car struck her "in behind the hind legs, the horse's hoofs; in at the hoof," and broke her back.

It is, indeed, well known that the displacement of air by the rapid movement of a car creates a current; but it is equally a matter of common observation that this current is felt chiefly at the sides and in the rear of the car, and does not appreciably precede it. The allegation that, in the present case, this current so far preceded the car that the mare, frightened as described, thereupon placed herself in a position to be struck by the fender while the car was moving at a speed of little less than thirty feet a second, recalls the frequent case in which the traveler at a railroad crossing, while no train is within sight or hearing, is struck at the moment of stepping on the track. Natural law will scarcely tolerate such liberties.

According to the plaintiff's testimony, the mare was accustomed to trolley cars, and her action in the premises arose from fright, caused by the blowing of his hat against her. Thus we have the familiar case of an accident resulting from the uncontrollable movements of a frightened horse. Upon well settled principles, unless this fright was due to the defendant's negligence the action cannot be sustained.

The declaration charges, as the negligence complained of, that the car " was run carelessly, negligently and improperly, at a very high rate of speed, without giving any signal or warning, and the speed of the car was increased as it approached the plaintiff's team, until it struck, bruised, lacerated and wounded the horse."

At the outset, we may eliminate the allegation as to the absence of a signal or warning. Nothing apparent in the situation called for signal or warning. On the contrary, as in Phila. Traction Co. v. Bernheimer, 125 Pa. 615, this might of itself have frightened the mare. As to the actual rate of speed, the evidence on the part of the plaintiff was wholly indefinite. It was not shown that the plaintiff and his witnesses who testified on this point possessed knowledge or experience that qualified them to judge of this; their estimates were clearly nothing but the crudest guesswork. But even assuming their correctness, they fall short of showing that the car " was run carelessly, negligently and improperly." As was held in Yingst v. Street Railway Co., 167 Pa. 438, " To make out such an allegation, it is necessary to know what is the standard of legitimate speed for an electric car on such a street, and, next, was that standard exceeded. As electric cars may lawfully be run upon the streets, and may certainly maintain a fair rate of speed, it is not possible to establish an allegation of negligence in respect of speed without testimony showing a standard, and further testimony showing a breach of the standard, and no jury can have liberty to deal with such a question unless there is practical evidence in the case upon these subjects." And here, as in that case, " The plaintiff has furnished no proof whatever as to what is the lawful rate of speed at which an electric car may run over such a street or on any street. Not one of his witnesses was even asked the question whether the speed of the car was greater than was allowable for an electric car to run, or whether they had any

knowledge upon that subject. No experts in such matters were called to testify as to what would be a reasonably prudent rate of speed for such a car over such a street, and in short no evidence whatever was given upon that subject." To exceed the limit fixed by municipal ordinance is not of itself negligence: Lederman v. R. R. Co., 165 Pa. 118.

While nothing in the nature of a specific quantitative standard has been fixed, the principles by which the proper standard is to be determined are not doubtful. "The use of electricity as a motive power has created new conditions, from which new duties arise. The greater speed at which cars are moved increases the danger to passengers and to persons on the streets, and of these dangers all persons must take notice:" Reber v. Traction Co., 179 Pa. 339, cited with approval in Thayne v. Traction Co., 191 Pa. 249. "Electric cars have a lawful right to go fast, to go with speed. The fact that they can do so is one of the great reasons of their being:" Yingst v. Street Railway Co., supra. "We are not prepared to lay down any rule in regard to the rate of speed at which an electric car may be run between crossings, nor to say that the mere fact that the car was moving faster than usual would be sufficient to justify the jury in finding negligence. All that can be safely said upon this subject is that the car must be kept well in hand, and that the speed must not be so great as to make this impossible, or to endanger the safety of the public using the streets with reasonable care. But these passenger railways are created to facilitate the movements of the general public, and to furnish rapid transit. The purpose of their owners and the demand of the public are that the greatest rate of speed consistent with the safety of other persons using the street or highway shall be maintained; and we are unable to say that any rate of speed that does not transcend these limits is negligence or should be submitted to the jury as sufficient to justify a verdict against the railway company:" Kline v. Traction Co., 181 Pa. 276. "Rapidity of transit is no longer a mere convenience to the traveler; it has become a matter of vital interest to the general business of the community. The increased speed upon passenger railway lines, with its resultant dangers, now approximates to that of steam railroads, and indeed, in many cases, exceeds the speed of the fastest trains at a time not too remote

to be within the memory of every judge on this bench:"
Thayne v. Traction Co., supra.

It is clear from all the evidence on the subject, on both sides,
that the car was running at its usual rate of speed. There is,
moreover, nothing to show that the fright of the plaintiff's mare
was due to the speed of the car, or even to its noise; as to the
latter, the plaintiff was twice questioned by his counsel as to
the kind of noise made by the car in passing, and replied, " Just
the breeze off the car," which, he alleges, blew off his hat. The
horse tied to the telegraph pole was not affected by the speed
of the car, the noise, or the breeze. As to the animal struck
by the car, it is quite evident that, as one of the plaintiff's wit-
nesses testified, " If he had not had anything to scare him, he
would not have been struck." The immediate cause of its
fright was the blowing of the plaintiff's hat against it, and not
the speed of the car, the current of air produced thereby, or the
noise of the car. But the right of a street railway company to
run its cars, at a proper rate of speed, with the incident noise
and air current, is not less than the right of the citizen to drive
his horses; and the company is not responsible for the fright
of a horse at the movements of a car: Hazel v. Passenger
Railway Co., 132 Pa. 96. As to fright from the cause here
shown, the hat of a person beside the track may be so insecurely
placed on his head that a very slight breeze will displace it.
Here, beyond question, the fright of the animal was the proxi-
mate cause of the accident; the speed of the car, the breeze
thereby created, and the blowing of the plaintiff's hat against
the animal, are remote causes, neither necessarily nor directly
tending to bring about the accident, and placing no responsi-
bility on the defendant. A railroad company cannot be required
to anticipate and guard against such a succession of occurrences
as here preceded the injury to the plaintiff's mare. Under all
the evidence a verdict for the defendant should have been
directed.

Judgment reversed.

Orlady, J., and William W. Porter, J., dissent.