## Welke *v.* Bergdoll, Appellant.

*Negligence—Master and servant—Risk of employment—Assumption of risks.*

1. If a servant undertakes the performance of work the danger of which he fully comprehends, the fact that he undertakes it unwillingly, and for fear of losing his employment will not relieve him of the assumption of the risk incident thereto.

2. Where a man employed as a farm hand is requested by his employer to act as her coachman in a city in which she lived, and he at first refuses, telling her that he had never driven a horse in his life, but subsequently accepts the employment, and on his first drive the horses run away and he is injured, he cannot recover damages from his employer for his injuries in the absence of any evidence that the horses were known to be fractious, or that the harness was defective, or that the accident was due to the driver's inexperience.

Argued Oct. 21, 1914. Appeal, No. 140, Oct. T., 1914, by defendant, from judgment of C. P. No. 1, Phila. Co., March T., 1912, No. 3,896, on verdict for plaintiff in case of Gustave Welke v. Emma C. Bergdoll. Before Rice, P. J., Orlady, Head, Kephart and Trexler, JJ. Reversed.

Trespass to recover damages for personal injuries. Before Brégy, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $300. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*R. Stuart Smith,* for appellant.

No printed brief for appellee.

OPINION BY TREXLER, J., February 25, 1915:

Briefly stated the testimony of the plaintiff was to the effect that after he had worked about nine months on defendant's farm, she told him to come to town and act as her coachman.  He replied that he could not do it, that he had never driven a horse in his life.  The defendant said she would teach him.  He came to town, and on the day of the accident he was ordered to drive the team, and although he protested as before, he nevertheless undertook to act as coachman.  He testified that he started to drive and the horses ran fast and fought. He tried to stop them, but the line broke and he fell out and was injured.

There was no testimony that the horses were of vicious habits and accustomed to running away, nor was there any evidence that the harness was not in good condition.  The sole question which the court submitted to the jury was, "Did the defendant insist upon putting a man to work who told her he did not know anything about horses, and did she insist upon it and persuade him to do a thing which he did not know how to do, and were his injuries the result of that?"  The finding of the jury that defendant was negligent must have been predicated upon the defendant's employing an inexperienced workman to perform a dangerous task, the perilous character of which was unknown to him.  In considering the facts, we find that his lack of knowledge and his inexperience was of course known to both of them.  He asserted that he had never driven any horses.  He knew he was undertaking a job for which he was not fitted.  He was willing to share the

risk with his employer. That he protested before he took the job does not at all prevent us from assuming that he finally willed to take it. The danger of the undertaking under the facts in the case was obvious to him. It was not the case of an employer taking a man from his usual employment and temporarily putting him on a dangerous job. The plaintiff undertook a new employment at advanced wages. He was not forced to do the work. Having been tendered this new employment he was a free agent and could accept or not, as he chose. The case differs from those where a man is ordered to do work which is dangerous and unfamiliar and the master's orders are in the nature of a guarantee that the work can be safely done. In such cases, the employee has the right to depend upon the supposedly superior knowledge of the master. As we have said before, there is no evidence that the horses were known to be fractious, nor that the harness was defective, nor that the accident was due to the driver's inexperience. The horses evidently were frightened and ran away. What caused the horses to run away we do not know. There is no fact in the case which answers the question and the jury may not guess at it: Pittsburg Southern Railway Company v. Taylor, 104 Pa. 306. That there was a possibility of the horses running away is a fact which we can assume was within the common knowledge of both parties to this suit.

If the servant undertakes the performance of work, the danger of which he fully comprehends, the fact that he undertakes it unwillingly and for fear of losing his employment will not relieve him of the assumption of the risk incident thereto: 20 Am. & Eng. Enc. of Law (2d ed.), p. 120.

We are therefore unable to see wherein the negligence of the defendant lies. The assignments of error are sustained, the judgment is reversed and judgment is entered for the defendant.