## Erickson *v.* Sutherland, Appellant.

*Negligence—Animals—Death resulting from run away horses— Evidence.*

In an action to recover damages for the death of plaintiff's husband resulting from the running away of two horses which he was driving, plaintiff is not entitled to recover where the evidence shows that the deceased was in the employ of the defendants, the owners of the horses; that he was an experienced horseman, having been employed for years in using and caring for horses; that the horses

were placed in charge of the deceased a few days before the accident; that there was nothing from their behavior to show that they were vicious; that spectators who saw the deceased driving them before the accident described the horses as acting like well behaved, broken horses; that after the accident they were described as being cool, and not excited or unmanageable when stopped a short distance away; that what started them to run did not appear from the evidence; and that the only evidence tending to charge the defendants with responsibility was an alleged statement by one of them, that he knew the horses were wild and unbroken, and forgot to notify the deceased.

In such a case it is essential that the plaintiff should show with some degree of certainty that the condition complained of, was the probable producing cause of the accident. It need not be established by positive proof, but the evidence should be such as to exclude to a reasonable certainty every theory but that the accident occurred because the horses were wild, unbroken, and unroadworthy. The mere proof of the runaway does not of itself imply negligence.

Argued March 5, 1918. Appeal, No. 13, March T., 1918, by defendant, from judgment of C. P. Luzerne Co., Oct. T., 1911, No. 473, on verdict for plaintiff in case of Alma J. Erickson v. Coray Sutherland and Charles L. McMillan, doing business as Sutherland & McMillan. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ.   Reversed.

Trespass to recover damages for death of plaintiff's husband.   Before STRAUSS, J.

The circumstances relating to the accident are set forth in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $750.   Defendant appealed.

*Error assigned* was in refusing defendant's motion for judgment n. o. v.

*P. F. O'Neill,* with him *F. W. Wheaton,* for appellants. —The mere proof of a runaway does not by itself imply

518    ERICKSON *v.* SUTHERLAND, Appellant.

negligence: Collier v. Knox, 222 Pa. 362; Keenan v. Lloyd Co., 236 Pa. 246.

To hold the defendants liable in this case the plaintiff was bound to show that the defendants had previous knowledge that the horses were, in point of fact, "unbroken and wild": Hamilton v. Hopkins, 247 Pa. 499.

*S. S. Herring,* for appellees.

OPINION BY KEPHART, J., May 6, 1918:

The plaintiff's statement avers that the defendants provided their employee with two "unbroken, wild and unroadworthy" horses, attached to a wagon, without warning him of their "nature and character"; that by reason of their wildness, the horses became "unmanageable and uncontrollable," ran away causing an injury, from which the employee died. The evidence submitted is clearly insufficient to sustain any of the material averments necessary to impose liability on the defendants. It shows that the horses were, in fact, gentle and tractable. The appellee's testimony was that the deceased was an experienced horseman, having been for more than twenty years constantly employed in and about horses, using and caring for them. When these particular horses came to the defendant's stable a few days before the accident, he took charge of them. There was nothing from their behavior that would indicate that they were of a vicious nature, inclined to be fractious, or unbroken. On the day of the accident, he drove them to the blacksmith's shop and from there to the street where the accident occurred. A number of persons saw the team being driven away from the shop and watched them traveling for some distance. They described the horses as being just like any ordinary team of heavy draft horses, acting like well-behaved, broken horses. When the team was next seen, the horses were running down street with the right front wheel off the wagon. A little later the deceased was seen to suddenly leave his seat in the wagon. He

was either jolted from it, or in an attempt to get off, was thrown to the ground. The only evidence tending to charge the defendants with responsibility was an alleged statement by one of them that he knew the horses were wild and unbroken and forgot to notify the deceased. From it the jury was to infer that the runaway was occasioned because the horses were wild and unbroken. This statement is the only proof offered to show that the horses were in fact wild and unbroken. The causal relation, if any could exist, between the fact of the accident and the statement referred to disappears entirely when the known facts of what occurred before and after the accident are considered. After the accident, those who led the team away, testifying for the appellee, describe them as being cool, not excited or unmanageable when stopped but a short distance from where the deceased fell. Their behavior was apparently the same as when they left the blacksmith's shop. We are entirely in the dark as to what caused the runaway. It is a fact that frequently some of the most roadworthy horses will frighten at some unusual disturbance, or a piece of paper blown suddenly in front of them. We do not know what caused the wheel to come off. It does not appear whether it was from a broken or loosened nut on the axle, permitting it to run against a telephone pole, or from a collision with the pole. Either would account for the apparent scarring of the telephone pole. We do know that if the wheel would come off when the wagon was in motion, the tongue of the wagon would be thrown violently to the side, usually striking one of the horses. It would require a very sensible animal to stand such treatment without fright. These incidents are mentioned merely to show the many causes that might have occasioned the runaway for which the owner may not in any way be responsible. It is essential that the plaintiff should show with some degree of certainty that the condition complained of was the probable producing cause of the accident. It need not be established by positive

proof, but the evidence should be such as to exclude to a reasonable certainty every theory but that the accident occurred because the horses were wild, unbroken and unroadworthy. The mere proof of the runaway does not of itself imply negligence: Coller v. Knox, 222 Pa. 362; nor, under facts such as appear in this case, would the additional evidence that the owner said the horses were unbroken and unmanageable, without some evidence to show that the runaway was caused by that condition. We might go further and hold that the deceased, having been an experienced horseman, had ample time to become acquainted with the animals and had the same, if not a better opportunity, to know them than the owner. In voluntarily undertaking the duties of his position, the plaintiff assumed the risk incident to such employment: Welke v. Bergdoll, 59 Pa. Superior Ct. 129.

The judgment of the court below is reversed.